JOSEPH KOHN, Respondent, *v.* JOSEPH M. KOEHLER, Appellant.

The Austrian government, for the purpose of obtaining a loan, issued certain bonds by which that government obligated itself to pay the principal with interest and a premium named, and also any additional sum which the holder might become entitled to in case the number of his bond drew a prize in a drawing to be had as specified. *Held*, that this was not a lottery scheme within the meaning of the provisions of the Revised Statutes prohibiting lotteries, and that the vendor of one of said bonds was not liable under the provision (1 R. S. 665, § 22) giving to the purchaser of any lottery ticket, share or interest, a right to sue and recover of the vendor double the amount paid.

(Argued June 9, 1884; decided June 24, 1884.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, which reversed a judgment in favor of defendant, entered upon the report of a referee.

The nature of the action and the material facts are stated in the opinion.

*Benno Loewy* for appellant. Neither the courts nor the legislature of this State have the power to declare a valid Austrian government bond to be a lottery ticket. If the instrument is a valid government bond at the place of its issue, it remains such wherever it goes, and is protected by the rules of international law. (*Scudder* v. *U. N. B'k*, 91 U. S. 406, 413; *Miller* v. *Tiffany*, 1 Wall. 298, 310; *Chapman* v. *Robertson*, 6 Paige's Ch. 627, 634; *Thatcher* v. *Morris*, 11

N. Y. 438 ; *Commonwealth of Kentucky* v. *Bassford*, 6 Hill, 526 ; *Cox* v. *U. S.*, 6 Peters, 172 ; *Duncan's Heirs* v. *U. S.*, 7 id. 435.) The Austrian government bond in suit is an article of commerce, the importation of which is permitted by Congress ; any State law prohibiting its sale is, therefore, unconstitutional and void. (U. S. Constitution, art. 1, § 8 ; *Brown* v. *Maryland*, 12 Wheat. 419 ; *People* v. *Companie Generale Transatlantique*, 107 U. S. 59, 60 ; *Henderson* v. *Mayor, etc.*, 92 id. 259 ; *R. R. Co.* v. *Husen*, 95 id. 465 ; *Hall* v. *De Cuir*, id. 485, 487 ; *Cook* v. *Pennsylvania*, 97 id. 566 ; *Welton* v. *Missouri*, 91 id. 275 ; *Chy Lung* v. *Freeman*, 92 id. 275 ; *Low* v. *Austin*, 13 Wall. 29 ; *Griffith* v. *Burden*, 35 Iowa, 142 ; *Brainerd* v. *N. Y. & H. R. R. Co.*, 25 N. Y. 496 ; *White* v. *Vt. & M. R. R. Co.*, 21 How. [U. S.] 577.) There is no law of the United States which prohibits the importation of this species of property, hence it may be freely imported. ( *Welton* v. *Missouri*, 91 U. S. 282 ; *Hall* v. *De Cuir*, 95 id. 485, 490 ; 2 Story on the Const. [4th ed. by Cooley] 12, § 1072 ; *Brown* v. *Maryland*, 12 Wheat. 445 ; *Gibbons* v. *Ogden*, 9 id. 1 ; *McCullock* v. *State of Maryland*, 4 id. 316 ; *People* v. *Maring*, 42 N. Y. 374 ; 3 Keyes, 374 ; *Cook* v. *Pennsylvania*, 97 U. S. 566 ; *Wynehamer* v. *People*, 13 N. Y. 378.) The statute under consideration, if it is held to cover the sale of foreign government bonds, such as the one in suit, cannot be upheld as an exercise of the "police power" of this State. (*Railroad Co.* v. *Husen*, 95 U. S. 471, 473 ; *License Cases*, 5 How. [U. S.] 576–577 ; *Henderson* v. *Mayor, etc., of New York*, 92 U. S. 271.) This statute, if it prohibits the sale of Austrian government bonds similar to that in suit, violates article 1, section 6 of the Constitution of this State, as it deprives defendant of his property without due process of law. (U. S. Const., 5th amend. ; *Wynehamer* v. *People*, 13 N. Y. 378, 384, 387 ; U. S. Const., art. 1, § 10, subd. 1 ; *People* v. *Otis*, 90 N. Y. 48 ; *Coe* v. *Schulz*, 47 Barb. 64 ; *Town of Lake View* v. *Rose Hill Cemetery Co.*, 70 Ill. 191 ; 1 Bl. Com. 139 ; *Bertholf* v. *O'Rielly*, 74 N. Y. 516.) This statute, if construed to include within its purview Austrian

government bonds similar to the one in suit, is in violation of
the provisions of the treaty with Austria, and, therefore, void.
(Public Treaties [Government ed. of 1875], 21.) This bond is an
article of commerce ; if it is a valid Austrian government bond,
it should be a part of the financial system of that government.
(*Henderson* v. *Mayor*, 92 U. S. 270 ; *Chy Lung* v. *Freeman*, id.
279.) The bond in suit is not " a ticket, share or interest in any
lottery" within the purview of our statute as construed by our
courts. (*Bigelow* v. *Benedict*, 70 N. Y. 204 ; Co. Litt. 42, 183 ;
*Hull* v. *Ruggles*, 56 N. Y. 427 ; *Wilkinson* v. *Gill*, 74 id. 66 ;
Penal Code, § 323 ; *Emmons* v. *Barnes*, 4 Daly, 418.) This bond
does not fall within the prohibition of the statute, because the
holder runs no risk of loss. ( *Wilkinson* v. *Gill*, 74 N. Y. 67 ;
*Harris* v. *White*, 81 id. 539 ; *People* v. *Sergeant*, 8 Cow. 139,
140 ; *People* v. *Payne*, 3 Denio, 99.)

*Leo Goldmark* for respondent. The test of a lottery is the
distribution of prizes by chance. (*Governors of Alms-house* v.
*Am. Art Union*, 7 N. Y. 228 ; *Rolfe* v. *Delmar*, 7 Robt. 80 ;
*Bennett* v. *Am. Art Union*, 5 Sandf. 614 ; *Negley* v. *Devlin*,
12 Abb. Pr. 210 ; *Hall* v. *Ruggles*, 56 N. Y. 424 ; *People* v.
*Noelke*, 94 id. 137.) The fact that the scheme is lawful in
Austria is immaterial. (*People* v. *Noelke*, 94 N. Y. 137.)

MILLER, J. The plaintiff claimed to recover in this action
double the amount paid by him for a bond issued by the
authority of the government of Austria, which he purchased
of the defendant, and which, it is alleged, purported on its face
to be a share or interest in and to a certain illegal lottery, and a
certificate of the said share or interest therein, describing the
same. The complaint alleges that the action accrued against
the defendant under and by virtue of a violation of the provis-
ions of section 32 of article 4 of title 8 of part 1, chapter 20
of the Revised Statutes (2 R. S. [6th ed.] 923), which declares
as follows : " Any person who shall purchase any share, interest,
ticket, certificate of any share or interest, or part of a ticket,
or any paper or instrument purporting to be a ticket, or share,

or interest in any ticket, or purporting to be a certificate of any share or interest in any ticket, or in any portion of any illegal lottery, may sue for and recover double the sum of money and double the value of any goods or things in action which he may have paid or delivered in consideration of such purchase, with double costs of suit." The bond in question provides for the payment of the sum of 100 guilden by the Austrian government in accordance with the conditions indorsed on the back of the same, together with one-fifth part of any such sum as may be allotted to the prize number of the bond, which sum must amount to at least 120 guilden with interest as provided.

Under the rules and regulations indorsed on the bond, relating to the drawing and redemption of the bonds, of which the one in question constituted a part, provision is made for the drawing of the bonds by a division into series, and the drawing of a certain number of series tickets to be deposited in a wheel to await the drawing of the prize numbers. At a time named a drawing is to be had from the series numbers, and provision is also made for the drawing of the prize numbers deposited in another and separate wheel, and the last-named drawing designates the numbers which are entitled to prizes, which prizes vary from 600 guilden to 300,000 guilden. Under the terms of the loan, for which the bonds were issued, the holder is entitled to receive his principal and interest and a premium of twenty per cent and what is termed a prize, if by the drawing provided for he becomes entitled to the same. The bonds referred to were issued by the Austrian government for the purpose of obtaining a loan of money, and the holders or owners receive the same upon payment of the amount of principal therein named or of the market value thereof. The evident object and purpose of the government in issuing the bonds was to obtain money for its own use and benefit. According to the true interpretation of the instrument the government, upon receiving the money, promises to pay the principal, interest and premium named, and in addition, any sum which may be drawn by the holder of the bond in accordance with the rules and regulations indorsed thereon.

This additional sum depends upon a contingency which is to be decided by lot or chance. Independent of this the amount and the terms are fixed by the conditions of the bond. The substance of the transaction relates to a loan of money to the government and the provision made for its payment. This is the main object and purpose for which authority was given to issue the bonds, and they were disposed of evidently having this in view. The provision by which upon a certain contingency the holder of the bond might receive an additional sum was no doubt an inducement held out for the purpose of obtaining money on the same, but it did not constitute the main feature and the substance of the transaction between the government and the purchaser of the bond. It was a mere appendage and an incident to its main purpose by means of which the holder might by chance receive a larger sum than the principal and interest which the bond itself provided for.

In loaning money upon these bonds the holder thereof ran no risk of loss, if the principal and interest were paid, and he took the chance, which might arise in case it should be determined by lot that his bond was entitled to a larger sum than the principal, interest and premium, which he was sure to get in any event. While this latter privilege depended upon chance, it cannot, we think, be held, upon any sound theory, that it converted the bonds into lottery tickets, and imparted to the loan which was made thereon the character, object and accompaniments of a mere lottery scheme. The purchase and sale of bonds, stocks and other securities are often matters of chance as to the value of the securities. Prices in these fluctuate; sometimes they may be bought at par, and sometimes they command a premium. A purchaser at par takes the chances of a rise in the value, or of a reduced valuation if he purchases at any price. Here the purchaser ran the risk of a deterioration beyond the price named, and took the chance of a rise if by lot the bond which he held became entitled to it. In both cases the value is a matter of chance, and in neither can it be said, because it depends upon chance, that this chance constitutes a lottery. The same re-

marks will apply to other securities which have a valuation which depends upon constant changes in the market. In many instances the value of securities of corporations may depend upon some chance which is annexed to the terms provided for the issue of the same. A proposition is made for the sale of bonds by some corporate body, and subscriptions made therefor. The series of bonds and the times when payable are to be determined by chance, and their value may depend upon the time they have to run. It cannot well be said that a subscriber who takes the chance of drawing by lot a bond for a long term, which commands a higher price than one for a shorter period, purchases a lottery ticket, and that the corporation that issued it is engaged in a lottery enterprise. This rule might well apply to the drawing of a series of bonds from a wheel, and to the drawing of an additional amount by lot by any of the holders of that series. It cannot, we think, be said that a loan made with a view of obtaining money to carry on the government of a nation, and which contains a provision by which the amount can be increased as to a portion of it upon a contingency named therein, constitutes a lottery scheme, and is in violation of the Constitution and laws of this State prohibiting lotteries, and of the statute cited.

In *Hull* v. *Ruggles* (56 N. Y. 427) a lottery is defined as follows: "Where a pecuniary consideration is paid, and it is determined by lot or chance, according to some scheme held out to the public, what and how much he who pays the money is to have for it — that is a lottery." A similar definition is given of a lottery in section 323 of the Penal Code.

Lotteries, which are the subject of condemnation under the Constitution and laws of this State, are schemes where money is paid for the chance of receiving money in return. As a general rule the money thus paid, in case a prize is not drawn, is lost, and no return had for the same. The purchaser may draw a prize, or may draw a blank, and he thus hazards what he has paid upon the chances, incident to a drawing by lot. The evils attending a system of lotteries, and against which the laws of this State are aimed, consist in the risk which

people are willing to take in hazarding their money with a chance of losing the same without any or but very little bene-fit or advantage whatsoever, and with but a remote prospect of gain. This was a species of gambling which inflicted serious injury upon certain classes of the community which prompted the prohibition of lotteries in the Constitution of this State, and the enactment of severe laws against their operation.

A government bond, of the character of the one which is in-volved in this action, does not come within the mischief intended to be remedied, or within the scope and purpose of the enactments against lotteries. Such an instrument is not named, nor is it within the purview of the statute or the intention of the law makers. These bonds have been issued by several of the gov-ernments of other countries, and in no sense can they be re-garded as being within the inhibition of the statutes of this State which were intended to suppress lotteries, and to pre-vent citizens from indulging in this species of gambling. The bond in question was an evidence of debt and a public security of a foreign government, exposed for sale the same as other securities upon which money is loaned, and its sale did not violate the provisions of the statute already cited. It was not raffled for or distributed by lot or chance, and it cannot be said that the purchase of the same by the plaintiff was within the provisions of section 22 of 1 Revised Statutes, 665. Nor was the issue of the bond or its sale a gift enter-prise within the provisions of the Penal Code already cited.

We think that the General Term erred in reversing the judgment entered upon the referee's report, and its order should be reversed, and the judgment entered on such report affirmed.

All concur, except FINCH, J., dissenting.

Order reversed, and judgment affirmed.