## STATE OF MINNESOTA *vs.* FRANK C. MOREN.

Argued by appellant, submitted on brief by respondent, Oct. 26, 1891. Decided March 9, 1892.

**Lottery—What is.**—Under the statute, (Pen. Code, § 282,) any scheme for the distribution of property by chance among persons who have paid or agreed to pay a valuable consideration for the chance is a lottery.

**Lottery—Devices in the Nature of.**—The statute is intended to reach all devices in the nature of lotteries, in whatever form, and the courts will tolerate no evasions for the continuance of the mischief which it is intended to remedy.

**Same.**—Where "clubs" of forty persons each were formed by a merchant tailor for the disposition of suits of clothing, each of the stipulated value of $40, by lot, under nominal contracts of purchase, the price to be paid in weekly installments of $1 each, such payments entitling the holders of tickets to participate in weekly drawings by lot, with the chance of securing goods of the value of $40 at any drawing, without further additional payments than the weekly installments then paid, *held* a lottery, within the statute.

**Same.**—Members enter into the scheme with the chance and hope of winning $40 by lot for the price of a ticket.

**The Device is within the Statute, although Each Member Receive Goods.**—A provision in the contract that each member of the club should eventually receive a suit of clothes, when he should have paid $40, if not previously drawn, or that he might withdraw at any time, and receive "the value of money paid in on said contract in merchant tailoring," does not make the scheme any the less a lottery, or take it out of the operation of the statute. The sale of each ticket gave the purchaser a chance to obtain something more than he paid for.

Appeal by Frank C. Moren from a judgment of the municipal court of the city of Minneapolis, *Elliott*, J., entered May 9, 1891, that he was guilty of drawing a lottery.

*Merrick & Merrick* and *D. W. Ellis*, for appellant, cited *Ex parte Shobert*, 70 Cal. 632; *Kohn* v. *Koehler*, 96 N. Y. 362; *Yellow Stone Kit* v. *State*, 88 Ala. 196.

*Moses E. Clapp*, Atty. Gen., and *Robert Jamison*, Co. Atty., for respondent, cited *U. S.* v. *Olney*, 1 Abb. (U. S.). 275; *Wooden* v. *Shotwell*, 23 N. J. Law, 465, 24 N. J. Law, 789; *Seidenbender* v. *Charles*, 4 Serg. & R. 151; *Bell* v. *State*, 5 Sneed, 507, 509; Bish. St. Crimes, § 955.

VANDERBURGH, J.   This prosecution is for an alleged violation of the statute against lotteries, and the complaint charges, in substance, that the defendant unlawfully sold to the complaining witness, for $1, a chance on certain personal property,—a suit of clothes of the value of $40,—such chance to be determined by lot between the complainant and a number of other persons, and dependent on the drawing thereafter by defendant of a lottery or scheme of chance, which said suit of clothes was then and there offered for distribution by chance among said persons and complainant, each having paid money for such chance.

The principal question upon this appeal, and the only one which we deem important to consider, is whether the evidence was sufficient to bring the case within the condemnation of the statute. Pen. Code, §§ 283, 287.   The scheme which the prosecution complains of was evidently a device by defendant to increase his custom and sales by inducing a number of persons to enter into an arrangement with him to make weekly payments (nominally) upon contracts for suits

of clothes, which payments entitled each to a chance, in weekly drawings, of obtaining a suit of clothes of the defendant by lot, without further payment, the winner to be then dropped from the list. There is no community of interest among the ticket holders, further than that they are all included in the list from which the drawing is made. Connected with the scheme is a several contract made by each customer or member of the so-called "club" with the defendant, with "coupons" indicating or representing the installment payments to be made before each drawing. A clear understanding of the nature of the case will be had by a reference to the testimony in the case. The complaining witness applied to defendant, "who is a merchant tailor in Minneapolis, to join a club." The latter showed him a contract, and asked him to sign it, and required a payment of $2 down, and gave him what he called "Coupon No. 1," cut from the contract, a copy of which is as follows: "Coupon No. 1. Moren, the Tailor. $2.00. Pay only $2.00 when signing this contract." He said they had a drawing the following evening, and witness would have a chance to draw a suit of clothes; that they had a drawing every Wednesday; and that he had a chance of drawing something every time a drawing was had. Witness paid the $2, and signed the contract, which was left with the defendant. At the first drawing witness was informed that he "did not win his suit of clothes," whereupon he paid the next installment,—$1,—for which he received "Coupon No. 2. Moren, the Tailor. $1.00." The contract, to which was attached 39 "coupons,"—1 for $2, and 38 for $1,—consecutively numbered, is as follows:

"Remember: Never pay a dollar without rendered a coupon. It is your receipt. Don't lose them; and have collector to sign his name to the same coupon. No agent has any authority to make any change, alter, or waive any of the conditions or stipulations of this contract.                                    MOREN, the Tailor.

"This agreement, made and entered into by and between L. L. Hammon, and Moren, the tailor, witnesseth that I, the said Hammon, hereby agree to become one of 40 members, who will co-operate for the purpose of purchasing clothing of the said Moren, the

tailor. And in consideration of this agreement I hereby promise to pay Moren, the tailor, at his office, or to his authorized collector, $2.00 at time of signing this agreement, and $1.00 per week thereafter, for 40 consecutive weeks, and always upon surrender of one of the consecutively numbered coupons attached hereto. Said Moren, the tailor, hereby agrees to deliver one garment each week to one of these 40 paying members, which includes said Hammon, who shall so co-operate. I hereby agree to abide by said delivery, whether I shall be the first or the last to receive a suit, it being agreed and fully understood by and between all parties herein concerned, and especially between Moren, the tailor, and the member whose signature is hereunto attached, that whenever I shall receive said suit by such manner of delivery, then all further obligations in this agreement shall be null and void, and I shall receive a receipt in full from said Moren, the tailor. Said Moren, the tailor, further agrees and guaranties to deliver one suit to the undersigned upon payment of $40: provided, however, that he has not previously received his suit. Said Moren, the tailor, further agrees to give anyone wishing to withdraw from the club at any time the value of money paid in on said contract in merchant tailoring.

"Dated this 17th day of March, 1891.

"L. L. HAMMON, 610 Boston Blk.

"—— date ——, 189—.

"Received of ——— ———, $———, in full of all demands to date."

The delivery of one garment per week to one of the 40 paying members under the contract was to be made at and by means of the weekly "drawings;" so that, as the defendant explained to the witness, he might get a suit of clothes for $2 at the first drawing, and at any subsequent drawing for the additional $1 required by the coupons. At any time the suit was drawn the lucky drawer would drop out of the contract, and would have to pay no more. If he continued to pay, and was the least favored by the lot, he would have to pay $40, and then be entitled to a suit of clothes. The method of conducting the drawing is best described by the defendant in his

testimony: "I pick out a contract from the table. There are 40 different contracts, and these forty different contracts in separate envelopes, and we put those forty envelopes in one pile, and some one picks out one, and then you take out the contract, and whatever contract that is, the man gets a suit of clothes; so that the man that pays in the $2.00 gets a suit of clothes, and gets nothing else. He gets a $40 suit, and he then ceases to be a member of the club; in other words, he drops out. Then there are 39 of the original 40 left, and then each pays in a dollar next week, and then we supply the place of the man that got the suit of clothes; that is, the ranks are filled up, so that there is a drawing of 40 contracts the second week, just the same as the first, and the man that gets the suit the second week gets it for $3.00. Each member gets a coupon when he pays his money." It further appears that the complainant was notified by the defendant, when he paid his money, that he might drop out at any time, and receive other goods in consideration of the money paid.

The foregoing presents fully the case upon which the prosecution rests, and we think it is sufficient to support the conviction. There was an arrangement for a drawing by lot, and the so-called "coupons" answered to lottery tickets, entitling the holders to participate in the chance of winning property of much greater value than the sum paid for the "coupon;" and the fact that the holder had the option to receive in goods the amount already paid would probably operate only as an additional incentive to purchase the coupons in aid of the lottery scheme. It does not take the scheme out of the statute. They were not bought in order to get their face value in goods. The vicious element still inheres in the transaction. Patrons come into it with the hope and chance of winning a $40 suit by lot for the price of a "coupon." The sale of a ticket gave the purchaser the chance to obtain something more than he paid for, and that became an extra inducement for the purchase. *U. S.* v. *Olney*, 1 Abb. (U. S.) 275; *Regina* v. *Harris*, 10 Cox, Crim. Cas. 352. The term "lottery" has no technical meaning, but under the statute it must be construed in a popular sense, and with the view to remedy the mischief intended to be prevented.

The statute is intended to reach all devices which are in the nature of lotteries, in whatever form presented; and the courts will tolerate no evasions for the continuance of the mischief. It declares and defines a lottery to be a scheme for the distribution of property by chance among persons who have paid or agreed to pay a valuable consideration for the chance, whether called a "lottery," "raffle," or "gift enterprise," or by some other name. Pen. Code, § 282.

We deem it unnecessary to add anything further. The statute, in our view, is intended to cover cases like the one under consideration; and the order denying a new trial is affirmed, and case remanded.

(Opinion published 51 N. W. Rep. 618.)