## PEOPLE *v.* McPHEE.

LOTTERIES—SUIT CLUB.
  A "tailor suit club," the members of which contribute $1 each
  per week and have weekly drawings, and through which a
  member may receive a suit of clothes for $1, is a lottery or
  gift enterprise, as defined and prohibited by section 11344, 3
  Comp. Laws, though there is no chance for the members to
  sustain a loss.

Exceptions before judgment from Chippewa; Steere, J.
Submitted February 17, 1905. (Docket No. 267.) Decided April 21, 1905.

Monroe J. McPhee was convicted of conducting a lottery. Affirmed.

*Holden & Holden* (*Clyde Hayden*, of counsel), for appellant.

*John P. Conrick*, Prosecuting Attorney, for the people.

OSTRANDER, J. At the conclusion of the testimony in this case, counsel on both sides asserted that there was no issue of fact to be determined, and requested the court to direct a verdict either of conviction or acquittal, according to his opinion of the law. The court instructed the jury that under the testimony they should render, and they did render, a verdict of guilty as charged, and the case comes here upon exceptions before sentence.

Respondent is charged in the information with setting up and promoting a lottery for merchandise, and that he did dispose of merchandise by way of lottery and gift enterprise, contrary to the form of the statute. He is a merchant tailor doing business at the city of Sault Ste. Marie, and, in connection with or as a part of his regular business, he conducted what is known as a "tailor suit club," or

"suit club." This suit club had 30 members, who each paid to respondent $1 a week. Respondent gave receipts for the money, dated, and in the following form:

" $1.00.   Received of——one dollar, club dues.
                              " M. J. McPHEE."

To each member a number was allotted by the members themselves. These were put in a cigar box, thoroughly mixed and shaken, and a drawing was made from this box by one of the members according to some plan agreed upon among themselves. The drawings took place each Saturday night, and some member, as a result of the drawing, received for whatever he had paid in a suit of clothes or an overcoat valued at and worth $20, made to order by respondent. If a member won, he drew out of the club, and a new member was taken in. It might occur that one who had paid in but $1 would get the suit of clothes or overcoat, and it might occur that a member would pay $20 and participate in 20 drawings without securing either as a result of the drawing. It was a part of the agreement, however, and was the practice, to permit a member of the club to withdraw at any time, and upon such withdrawal he was entitled to receive from respondent clothing of the value of the money he had contributed to the club, or let the sum of money he had paid in stand as a credit and as part payment for clothing purchased of respondent. That is to say, if a member had paid $1 a week for 20 weeks, he had a credit of $20. If he had paid but 6 weeks, he had a credit of $6, which he could use with the respondent in the purchase of garments.

Counsel for respondent say that the only question involved is whether, upon this state of facts, a verdict of guilty was properly directed, or, to put it in another way, whether respondent was conducting a lottery or gift enterprise, within the meaning of our statute.

The statute in question is section 11344 of the Compiled Laws of 1897, and is the first section of chapter 316, enti-

tled, "Of offenses Against the Public Policy." It provides that:

"Every person who shall set up or promote, within this State, any lottery or gift enterprise for money, or shall dispose of any property, real or personal, goods, chattels or merchandise or valuable thing, by the way of lottery or gift enterprise, and every person who shall aid, either by printing or writing, or shall in any way be concerned in the setting up, managing, or drawing of any such lottery or gift enterprise, or who shall in any house, shop, or building owned or occupied by him or under his control, knowingly permit the setting up, managing, or drawing of any such lottery or gift enterprise, or the sale of any lottery ticket or share of a ticket, or any other writing, certificate, bill, goods, chattels or merchandise, token or other device purporting or intended to entitle the holder or bearer or other person to any prize or gift, or to any share of or interest in any prize or gift to be drawn in any such lottery or gift enterprise, or who shall knowingly suffer money or other property to be raffled for in such house, shop, or building, or to be there won by throwing or using dice, or by any other game or course of chance, shall for every such offense be punished by a fine not exceeding two thousand dollars, or by imprisonment in the county jail not more than one year."

A subsequent section of the same chapter (§ 11346) provides that if any person shall, after being convicted of any offense mentioned in this section, commit the like offense, or any other of the offenses therein mentioned, he shall, in addition to the fine provided therefor, be further punished by imprisonment in the State prison not more than three years, or by imprisonment in the county jail not more than one year.

The single contention of counsel is that, inasmuch as there was no chance for a member of the club to sustain a loss, respondent was not conducting a lottery. We have been referred to many definitions of the word "lottery," some of them made by lexicographers, some by judges, and particularly to one given in the third edition of Bishop on Statutory Crimes, § 952, which counsel say supports their contention, and which is:

"A lottery may be defined to be any scheme whereby one, on paying money or other valuable thing to another, becomes entitled to receive from him such a return in value, or nothing, as some formula of chance may determine."

We do not understand how this definition aids respondent. It is well known that in most lottery schemes some of those who pay get nothing. It is difficult to see how a definition intended to be general, and to describe the results to participants in a lottery, could well omit language indicating that the result might be *nothing*. But the learned author does not mean that, to be classed as a lottery, the scheme must have blanks. This is evidenced by the context and by cases cited. In another place the same author says that the word has not yet been defined in a manner which is both inclusive and exclusive. Our statute does not define the word. Nor need we attempt a definition. Like similar statutes in other of the States, our own has a general purpose, and this purpose is not alone evidenced by the language of the statute. In a large majority of the States, including Michigan, there is a constitutional limitation upon the power of the legislature to authorize lotteries. Few definitions are directly or indirectly attempted. These various constitutional inhibitions in effect recognize and affirm the rule stated in *Stone* v. *Mississippi*, 101 U. S. 814, that lotteries are not in the legal acceptation of the term mala in se, but may properly be made mala prohibita. Such a provision has been held to be so far self-executing as to warrant and require the court, in the absence of penal or other statutes upon the subject, to declare the charter of a private corporation, whose scheme and plan of business was within the constitutional inhibition, to be forfeited. *State, ex rel. Kellogg,* v. *Mercantile Ass'n*, 45 Kan. 351 (11 L. R. A. 430). In the case mentioned it was said that the word "lottery" must be construed in the popular sense, with a view of remedying the mischief intended to be prevented, and to suppress all evasions for the continuance of the mischief. The word

"lottery" is generic.    No sooner is it defined by a court
than ingenuity evolves some scheme within the mischief
discussed, but not quite within the letter of the definition
given.    This is made very apparent in the large number of
cases which we have examined in which various methods
of distributing money or goods by chance are examined
and discussed.    It is said by counsel for respondent in their
brief that this court, in *People v. Elliott*, 74 Mich. 264
(3 L. R. A. 403), laid down a definition which did not in-
clude a possibility of loss.    In that case, as in others, the
language of the opinion is addressed to the facts before the
court, and the contentions presented for decision.    We ap-
prove the language used in the opinion in *Ballock* v. *State*,
73 Md. 1 (8 L. R. A. 671), where it is said:

"Our statute does not justify a court  *  *  *  in decid-
ing a thing is not a lottery simply because there can be no
loss, when there may be very large contingent gains or
because it lacks some element of a lottery according to
some particular dictionary's definition of one, when it has
all the other elements, with all the pernicious tendencies
which the State is seeking to prevent."

In that case it was contended that no blanks were
drawn, and the scheme considered provided for the ulti-
mate return of the entire investment, with interest; the
time of such return to certain holders of the bonds depend-
ing upon chance, and the inducement for investment being
the possibility of getting a bonus, also determined by
chance.    See, also, *State, ex rel. Attorney General*, v.
*Investment Co.*, 64 Ohio St. 283 (52 L. R. A. 530);
*Wooden* v. *Shotwell*, 23 N. J. Law, 465; *U. S.* v. *Olney*,
Deady (U. S.), 461; *State* v. *Mumford*, 73 Mo. 647; *Mac-
Donald* v. *U. S.*, 63 Fed. 426; *Reg.* v. *Harris*, 10 Cox,
C. C. 352.    For a considerable collection of cases and
general discussion, see *Equitable Loan & Security Co.*
v. *Waring*, 117 Ga. 599 (62 L. R. A. 93).    The case of
*State* v. *Moren*, 48 Minn. 555, is in its essential facts pre-
cisely like the case at bar.    The only question considered
by the court was whether the evidence was sufficient to

bring the case within the condemnation of the statute. The Minnesota statute defines a lottery to be a scheme for the distribution of property by chance among persons who have paid or agreed to pay a valuable consideration for the chance, whether called a "lottery," "raffle," or "gift enterprise," or by any other name. The court held the term "lottery" to have no technical meaning, but under the statute it was to be construed in the popular sense, and with the view to remedy the mischief intended to be prevented.

"The statute is intended to reach all devices which are in the nature of lotteries, in whatever form presented, and the courts will tolerate no evasions for the continuance of the mischief."

Of the fact that the holder had the option to receive in goods the amount he had paid, it was said that it would probably operate only as an additional incentive to aid the lottery scheme.

"It does not take the scheme out of the statute. They were not bought in order to get their face value in goods. The vicious element still inheres in the transaction. * * * The sale of the ticket gave the purchaser the chance to obtain something more than he paid for, and that became an extra inducement for the purchase."

Counsel for respondent say that the Minnesota statute differs from ours, and that the court had before it what we have not—a statutory definition of the word "lottery." The definition, however, is very broad, and cannot be said to contain any language which would make the decision on that account inapplicable here. Upon the facts and the construction placed by the court upon the statute, the case is decisive.

It cannot be denied that the respondent sought to, and presumably did, increase his business by a device or scheme, the feature of which, so far as securing patrons and customers was concerned, was the chance to obtain $20 worth

of clothing for some sum of money less than $20. It was calculated to, and did, appeal to the gambling propensity of men, was within the mischief at which the legislation is aimed, was within the terms of the statute, and, in our opinion, a disposition of property by way of lottery. We are referred by counsel to no case which sustains their contention.

We have not lost sight of the fact that the charters of various cities permit ordinances forbidding lotteries and punishing promoters of them, treating them as minor offenders, nor that the statute before us warrants the imposition of a considerable penalty, and makes a second offense a felony. The statute is general, as it must be, and applies to big and to little lotteries. The extent of the mischief done by respondent is not a consideration which ought to affect our determination.

We are of opinion that the court below was right, and the conviction is therefore affirmed.

MOORE, C. J., and CARPENTER, MCALVAY, and HOOKER, JJ., concurred.