PEOPLE OF PORTO RICO, Plaintiff and Appellant, v. RALPH SWIGGETT, Defendant and Appellee.

No. 3410. Argued December 22, 1927.—Decided March 21, 1928.

*José E. Figueras*, Fiscal, for the appellant. *R. Cuevas Zequeira* for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

The information in this case reads as follows:

"In the District Court of the Judicial District of San Juan, P. R. In the name and by the authority of The People of Porto Rico. United States of America. The President of the United States, SS. The People of Porto Rico vs. Ralph Swiggett for a violation of

section 291 of the Penal Code, a misdemeanor committed in the following manner:

"The said Ralph Swiggett, on or about the first day of October, 1927, in San Juan, P. R., which is a part of the judicial district of the same name, did unlawfully, wilfully and maliciously, contrive, prepare, establish and conduct a lottery under the following plan: The said accused Ralph Swiggett, on the date and at the place aforesaid, organized a so-called Club composed of Claudio Miranda and forty-nine other persons whose names are unknown to the undersigned district attorney, each of the fifty persons having promised to pay to the accused Ralph Swiggett the sum of $2.50 weekly for fifteen weeks for running the chance of winning by luck a suit of clothes to be awarded in a drawing among the fifty persons who composed the said club and had paid or promised to pay to the accused Ralph Swiggett the said weekly sum of $2.50 under an agreement or understanding between the fifty members of the club and the accused Ralph Swiggett to the effect that a suit of clothes worth $37.50 should be awarded and delivered by the accused to the member of the club who won by chance in each drawing to be held, according to the plan agreed upon beforehand by the defendant and the fifty members, every Saturday for the period of fifteen weeks. And the district attorney alleges further that according to the said plan each member of the club who failed to win in any of the weekly drawings had the right to and would receive from the defendant a suit of clothes worth $37.50 in return for the total amount of $37.50 paid by him at the end of the fifteen weeks when the club was closed according to the agreement between the defendant and the fifty members thereof. It was also a part of the agreement and understanding between the accused and the members of the club that the member who might win in any of the drawings had not to continue paying his weekly quota because he was ipso facto out of the club after winning the suit of clothes under the plan of drawings. The district attorney further alleges that according to the plan contrived by the accused and the different members of the club, any one of the members had a right to withdraw from the club at any time, in which case the accused should refund to him the amount he had paid according to the established plan, and the accused Ralph Swiggett, under the said plan and understanding with the fifty members, conducted the drawing according to the said plan on October 1, 1927, when Claudio Miranda was the lucky member who won a suit of clothes in the drawing.

"This is contrary to the law for such case made and provided and against the peace and dignity of the People of Porto Rico. (Sgd.) M. Romaní, District Attorney.

"The foregoing information is based on the sworn testimony of witnesses examined by me and I solemnly believe that there is good cause for presenting it to the court. (Sgd.) M. Romaní, District Attorney.

"Sworn to and signed before me this 14th day of October, 1927. (Sgd.) Pedro C. Timothée, by M. Aldea Bigles, clerk of the District Court."

The accused was arraigned on October 24, 1927, and demurred to the information. On the 2nd day of the following month of November the court sustained his demurrer for the reasons stated as follows:

"In another case against the accused Ralph Swiggett for conducting a lottery, decided on September 21, 1927, this court had an opportunity to study the question raised by the demurrer to the information and in that case the court said:

" 'Citing 17 R.C.L. 1226, and 38 C. J. 299, the district attorney contends that in some states of the Union, among them North Carolina, Georgia, Michigan and Texas, plans, schemes or clubs similar to that described in the stipulation of facts, formed generally by tailors for the distribution of suits of clothes by chance and known as Tailors' Suit Clubs, have been held to be lotteries. And the accused alleges on his part that the plan or scheme attributed to him for the distribution of suits of clothes is a mere transaction or contract of purchase and sale with a contingency of chance that is not the essence of the contract, but a simple incentive for its better performance, according to the decision in the case of Ex parte Shobert, 70 Cal. 632, and the interpretation given by the Supreme Court of Porto Rico to section 291 of the Penal Code in the case of People v. Mariani, 15 P.R.R. 363, holding that the kind of lottery prohibited by the statute is that in which there are tickets, that is, a plan for the distribution of prizes by chance.

" 'Section 291 of the Penal Code of Porto Rico had its origin in the Penal Code of California and is a literal translation of section 319 of the said Penal Code of California. In the jurisprudence of that State we have found no case similar to the present case. In ex parte Shobert, cited by the accused, it was held, following the

theory adopted in Kohn v. Koehler, 96 N. Y. 362, that a plan for the sale or distribution of bonds which provide for a rate of interest is not to be regarded as a lottery merely because the holder of them is granted an additional premium to be determined periodically by chance by virtue of drawings to be conducted for that purpose. See 16 Cal. Jur. 715–716.

"'The contention of the accused that the lottery prohibited by statute in Porto Rico is only that which is connected with tickets, which is a plan for the distribution of prizes by chance, as held in the case of Mariani et al., would be final in our opinion if in the later case of People v. Martínez, 23 P.R.R. 212, that doctrine had not been restricted by making the statute applicable also to the conducting of a pool. And although the Porto Rican Legislature has allowed this game within the race-tracks in Porto Rico (Act No. 40 of 1927) and has also permitted the raffles or lotteries known as *picas* on certain occasions, that is, during popular festivals (Act No. 25 of 1927), in that way limiting the extent of the penal provision that defines and punishes lotteries, we do not feel inclined to hold that a club like that said to be conducted by the accused when a member is obliged to remain until the termination of the contract, that is, that he can not withdraw from it without losing the money which he has invested, is not a lottery within the meaning of section 291 of the Penal Code. See State v. Lipkin, 169 N. C. 625; 84 S. E. 340.'

"In the information in the present case it is alleged that the suit of clothes won by the accused (*sic*) would be worth $37.50, the total amount paid at the end of the 15 weeks at the weekly rate of $2.50, and that if the member should be favored by chance in one of the drawings he would not have to continue paying and could withdraw from the club at·any time with the right to a refund of the amounts already paid. And the court is of the opinion that the element of loss, which is essential in lotteries, does not exist in this plan; and the mere fact that the member entitled to a suit of clothes is to be determined by chance in weekly drawings conducted for that purpose does not convert the said plan into a lottery within the meaning of section 291 of the Penal Code.

"The demurrer to the amended information on the ground that it does not state facts sufficient to charge a public offense is sustained and the information is hereby dismissed, without costs."

Judgment was entered immediately for the dismissal of

the information, without costs, and the district attorney took the present appeal from that judgment.

After a careful study of the law and the jurisprudence we find that no other conclusion can be reached than that the judgment appealed from should be reversed.

The law applicable is section 291 of the Penal Code that reads as follows:

"A lottery is any scheme for disposal or distribution of money or property by chance, among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property or a portion of it, or for any share or interest in such money or property, upon any agreement, understanding, or expectation that it is to be distributed or disposed of by lot or chance, whether called a lottery, raffle, or gift enterprise, or by whatever name the same may be known."

It covers the matter fully. The principal elements are chance, consideration and prize, and these exist in the act charged against the defendant. As contended by the *fiscal* in his brief, the element of chance is shown in this case in the weekly drawings conducted by the defendant; the consideration is evidenced by the $2.50 paid by the members of the club to the defendant for participation in the weekly drawing for a suit of clothes, and the prize is the suit of clothes won.

The fact that there is nothing lost by the members of the club who do not win the suit, for the reason that at the end of the fifteen weeks each member will receive a suit of clothes which appears to be worth the total amount paid, does not indicate that the defendant's plan is not a lottery. It is one of the many schemes that have been devised for eluding penal statutes equivalent or similar to ours in force in many of the states of the Union.

We take the following jurisprudence from the brief of the *fiscal:*

"As embracing the essential elements of a lottery within the

definition above given, so-called clubs wherein the members pay periodical dues and conduct periodical drawings for a specified article of merchandise are lotteries, even though the unsuccessful members are entitled to receive the article eventually, after the payment of a stipulated amount, or to withdraw and take out in trade the installments which they have paid, and although the winners are not determined by lot but are selected by the seller.'' 38 C. J., pages 299–300, section 22.

''Several instances will be found of 'suit clubs,' formed by tailors for the distribution of clothes by chance. The general plan of all these schemes is very similar, and they have been uniformly held to be lotteries. In one of these clubs, for example, the members each paid to a tailor one dollar a week and participated in weekly drawings for thirty weeks, the member drawing a certain number receiving a suit of clothes and then ceasing to be a member of the club, and the last member who paid for thirty weeks being entitled to a thirty-dollar suit of clothes regardless of the drawings. The court decided that the fact that a member who was unlucky in the drawing of prizes might, by continuing to pay a dollar a week for thirty weeks, receive a suit of clothes regardless of the drawings did not make the transaction any the less a lottery. Furthermore, the fact that each member of such club is entitled to receive clothing of the value of the money which he has contributed, whenever he chooses to withdraw, does not prevent the club from being a lottery, but probably operates only as an additional incentive to aid such lottery scheme, the vicious element still inhering in the transaction.'' 17 R.C.L. 1226–1227, section 13.

''The fact that there are no blanks to be drawn but that the holder of every number or ticket obtains something of value, does not prevent a distribution of prizes by lot or chance from being a lottery. . .

''Our statute does not justify a court in deciding a thing is not a lottery simply because there can be no loss, when there may be very large contingent gains; or because it lacks some element of a lottery according to some particular dictionary's definition of one, when it has all the other elements with all the pernicious tendencies which the state is seeking to prevent.'' *Ballock* v. *State of Maryland*, 8 L.R.A. 671.

''Suit clubs, the members of which pay weekly dues and have weekly drawings for suits, the unsuccessful members being entitled to receive a suit eventually, after the payment of a stipulated

amount, or to withdraw and take out in trade the installments which they have paid, are lottery schemes." 25 Cyc. 1639.

"The fact that a member who was unlucky in the drawing of prizes might, by continuing to pay a dollar a week for thirty weeks, receive a suit of clothes regardless of the result of the drawings, does not make the transaction any the less a lottery." *De Florin* v. *State*, 121 Ga. 593, 49 S. E. 699.

"The statute is intended to reach all devices which are in the nature of lotteries, in whatever form presented; and the courts will tolerate no evasions for the continuance of the mischief. Of the fact that the holder had the option to receive in goods the amount he had paid, it was said that it would probably operate only as an additional incentive to aid the lottery scheme." *State* v. *Moren*, 48 Minn. 555, 51 N. W. 618.

Nor does the fact that a member of the club may withdraw from it whenever he pleases with a refund of the money that he had paid, vary the nature of the plan or make it any the less a lottery.

That may be understood to be the holding of the Supreme Court of Minnesota in the case of *State* v. *Moren, supra,* for to refund it in currency or in goods is more or less the same. The language of the court is as follows:

"They were not bought in order to get their face value in goods. The vicious element still inheres in the transaction. . . The sale of a ticket gave the purchaser the chance to obtain something more than he paid for, and that became an extra inducement for the purchase."

The following citations are also pertinent:

"The fact that each member is entitled to trade out the amount he has paid in whenever he chooses to withdraw from the club does not prevent a suit club, which is a scheme by which a certain number of persons pay a small sum per week, and choose by lot each week one of the number who shall receive a suit of clothes worth much more than such weekly payment, upon receipt of which he ceases to be a member of the club, from being a lottery.

\* \* \* \* \* \* \*

"It can not be denied that the respondent sought to, and presumably did, increase his business by a device or scheme, the feature

of which so far as securing patrons and customers was concerned, was the chance to obtain $20.00 worth of clothing for some sum of money less than $20.00. It was calculated to, and did, appeal to the gambling propensity of men, was within the mischief at which the legislation is aimed, was within the terms of the statute, and, in our opinion, a disposition of property by way of lottery." *People* v. *McPhee*, 69 L.R.A. 505.

"A tailor is guilty of conducting a lottery where he organizes and conducts a suit club the members of which are to pay the price of a suit of clothes in weekly installments, a suit being made up each week for that member of the club which shall be determined by lot drawn under the supervision of the members, each member being entitled to credit upon clothing for the amount paid in by him and the lucky ones having discretion to withdraw upon receiving their suits.

   *       *       *       *       *       *       *

"Under this evidence we are thoroughly convinced, and so hold, that the appellants are both guilty of conducting a lottery within the contemplation of the law of this state, and have clearly violated both the letter and the spirit of the lottery statute." *Grant* v. *State of Texas*, 54 Tex. Crim. Rep. 403, 112 S. W. 1069.

The argument made in his brief by the learned attorney for the defendant can not obscure the broad and clear terms of the law and the opinions of the courts in interpreting that law in many cases and under the influence of innumerable circumstances.

This is not an offense created by interpretation. It was made so by the Legislature. The statute leaves no room for doubts of any kind.

Nor can the former laws and ancient customs that existed in this Island have any influence. The Penal Code of 1902 is a complete body of laws resulting from a uniform plan, and it contains section 291 which we have transcribed.

The jurisprudence of California does not decide the particular case submitted to our consideration. The trial judge said in his opinion: "In the jurisprudence of that state we have found no case similar to the present case."

The trial court was led into error by its idea that as the plan devised by the defendant contained no element of

loss, there was no public offense. Apart from the fact that it is very venturesome to say whether or not the element of loss exists in these cases, inasmuch as we must suppose that when a merchant conducts drawings for the distribution of suits of clothes besides selling suits for their so-called just value, it is because he can do so at a profit instead of suffering a loss, the fact is, as we said at the beginning, that the three elements which make the act a public offense are chance, consideration and prize.

Therefore, the judgment appealed from must be reversed and the case remanded to the district court for further proceedings not inconsistent with this opinion.

Mr. Justice Texidor took no part in the decision of this case.