El Pueblo de Puerto Rico, demandante y apelante, *v.* Ralph Swiggett, acusado y apelado.

No. 3410.—*Visto:* Diciembre 22, 1927. *Resuelto:* Marzo 21, 1928.

Lotería—Reglamentación y Prohibición—Planes Determinados Como Loterías—Clubs para Disponer de Artículos o Mercancías.—Un comerciante que organiza un *club* en que semanalmente se reparte por la suerte un traje entre los socios del mismo, comete el delito de lotería previsto y castigado en el artículo 291 del Código Penal, aunque los socios reciban siempre otro traje al final del período estipulado representativo del valor de sus cuotas y puedan retirarse cuando les plazca recibiendo el dinero que hubieren pagado hasta la fecha.

Sentencia de *Pablo Berga,* J. (San Juan), sobre excepción previa de falta de hechos ordenando el sobreseimiento y archivo de la acusación. *Revocada,* y devuelto el caso.

*José E. Figueras,* abogado de *El Pueblo,* apelante; *R. Cuevas Zequeira,* abogado del apelado.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

La acusación en este caso dice:

"En la Corte de Distrito del Distrito Judicial de San Juan, P. R. En el Nombre y por la Autoridad de El Pueblo de Puerto Rico, Estados Unidos de América, El Presidente de los Estados Unidos, S. S. El Pueblo de Puerto Rico, vs. Ralph Swiggett, por una infracción al artículo 291 del Código Penal (misdemeanor) cometido de la manera siguiente:

"El referido acusado Ralph Swiggett, allá por el día 1ro. de octubre de 1927, y en San Juan, P. R., que forma parte del distrito judicial del mismo nombre, ilegal, voluntaria y maliciosamente, inventó, preparó, estableció y jugó una lotería por medio del siguiente plan: el referido acusado Ralph Swiggett, en la fecha y sitio antes mencionado, estableció un llamado Club, compuesto de cincuenta personas, entre las cuales estaba y formaba parte del mismo el señor Claudio Miranda, y 49 personas más desconocidas para el Fiscal que suscribe, las cuales habían pagado o prometido pagar al acu-

sado Ralph Swiggett la suma de $2.50 semanales, durante quince semanas, por correr la aventura de obtener por suerte un traje de vestir, el cual había de ser adjudicado en un sorteo entre las cincuenta personas que componían dicho Club y que ya habían pagado o prometido pagar al acusado Ralph Swiggett, la referida suma de $2.50 semanales, por virtud de un acuerdo o inteligencia entre los cincuenta miembros del Club y el acusado Ralph Swiggett de que dicho traje de vestir de un valor de treinta y siete dólares con cincuenta centavos, sería adjudicado y entregado por el acusado al miembro del Club que resultare favorecido por la suerte en un sorteo que de acuerdo con el plan establecido y convenido de antemano por el acusado y los cincuenta miembros había de celebrarse cada sábado, y durante un período de quince semanas, y alega además el Fiscal, que de acuerdo con dicho plan cada miembro del Club que no hubiere sido favorecido en alguno de los sorteos semanales celebrados, tendría derecho y obtendría del acusado un traje de vestir de un valor de treinta y siete dólares, con cincuenta centavos, por los treinta y siete dólares, cincuenta centavos, cantidad total pagada por él al final de las quince semanas cuando se daba por terminado el Club de acuerdo con el convenio existente entre el acusado y los cincuenta miembros del Club; era además parte del convenio y del entendido entre el acusado y los miembros del Club, que la persona que resultase agraciada en cualquiera de los sorteos verificados no tenía que continuar pagando su cuota semanal quedando ipso-facto fuera del Club después de haber obtenido el traje de vestir objeto del plan y del sorteo; y alega además el Fiscal que de acuerdo con el plan establecido por el acusado y los distintos miembros del Club, cualquiera de éstos tenía derecho a retirarse en cualquier momento del Club, en cuyo caso tenía derecho a que le fueran devueltas por el acusado las distintas cantidades pagadas por él, de acuerdo con el plan establecido, y el acusado Ralph Swiggett, de acuerdo con dicho plan y el entendido entre él y los cincuenta miembros, practicó el sorteo de acuerdo con dicho plan el día 1ro. de octubre de 1927, habiendo sido favorecido por la suerte y obtenido el traje de vestir objeto del sorteo el socio Claudio Miranda.

"Hecho contrario a la ley, para tal caso prevista y a la paz y dignidad de El Pueblo de Puerto Rico. (fdo.)  M. Romaní, Fiscal del Distrito.

"La acusación que antecede está basada en el testimonio de testigos examinados bajo juramento ante mí, creyendo solemnemente que existe justa causa para presentarla al tribunal. (fdo.) M. Romaní, Fiscal del Distrito.

"Jurada y firmada ante mí, hoy 14 de octubre de 1927.   (fdo.) Pedro C. Timothee, por M. Aldea Bigles, Secretario, Corte Distrito."

Leída el 24 de octubre de 1927, el acusado la excepcionó y la corte declaró su excepción con lugar el 2 de noviembre siguiente, así:

"En otro caso, contra el mismo acusado Ralph Swiggett, por lotería, resuelto el 21 de septiembre de 1927, esta corte tuvo oportunidad de estudiar la cuestión levantada por la excepción perentoria a la acusación, y en él dijimos:

" 'Sostiene el Fiscal, citando 13 R.C.L. 1226 y 38 C. J. 299, que en algunos estados de la Unión, entre ellos North Carolina, Georgia, Michigan y Texas, planes, sistemas o clubs semejantes al establecimiento en la estipulación de hechos, formados generalmente por sastres para la distribución de trajes por suerte, y que se conocen con el nombre de *Tailors' Suit Clubs,* se ha resuelto que constituyen lotería.   Y el acusado por su parte sostiene que el plan o sistema que se le atribuye para la distribución de trajes son meras transacciones o contratos de compra-venta, con una contingencia que no constituye la esencia del contrato, o sea la suerte, y si un simple incentivo para su mejor realización, a tenor de lo resuelto en el caso *Ex-parte Shobert,* 70 Cal. 632, y la interpretación dada por la Corte Suprema de Puerto Rico al Art. 291 del Código Penal en el caso de El Pueblo vs. Mariani, 15 D.P.R. 388, que declara que la lotería prohibida por el estatuto es la de billetes, o sea la que establece un plan para la distribución de premios por suerte.

" 'El Art. 291 del Código Penal de Puerto Rico tiene su origen en el Código Penal de California, sienlo el precepto nuestro una traducción literal del Art. 319 del mencionado Código Penal de California.   No hemos encontrado en la jurisprudencia de dicho estado ningún caso que tenga analogía al presente.   En el caso de *Ex-parte Shobert,* citado por el acusado, se resolvió, siguiendo la teoría sostenida en Kohn vs. Koehler, 96 N. Y. 362, que no participa de la naturaleza de una lotería un plan para la venta o distribución de bonos que devenguen un tipo de interés, al tenedor de los cuales se concede un premio adicional que se determina periódicamente por la suerte a virtud de sorteos verificados con tal fin.   Véase 16 Cal. Jr. 715–716.

" 'La contención del acusado, de que el juego de lotería prohibido en Puerto Rico por el estatuto es únicamente el que tiene relación con billetes, que es un plan para la distribución de premios

por suerte, según se resolvió en el caso de *Mariani et al.*, sería, a nuestro juicio, definitiva, si con posterioridad, al decidirse el caso de *El Pueblo* vs. *Martínez*, 23 D.P.R. 228, no se hubiera restringido considerablemente aquella doctrina, haciendo también aplicable el precepto al juego de pool. Y aunque la Legislatura de Puerto Rico ha permitido este juego dentro de los hipódromos de Puerto Rico (Ley No. 40, de 1927), y también ha permitido las rifas o loterías conocidas con el nombre de "picas" mediante extracción de bolos, en determinadas ocasiones o sea durante fiestas populares (Ley No. 25 de 1927), limitando así el alcance de la disposición penal que define y castiga la lotería, no nos sentimos inclinados a sostener que clubs similares al que se le atribuye al acusado, cuando al socio se le obliga a permanecer hasta la terminación del contrato, o sea que no puede retirarse sin perder el dinero invertido, no constituya un juego de lotería dentro del artículo 291 del Código Penal. Véase *State* vs. *Lipkin,* 169 N. C. 625; 84 S. E. 340.'

"En la acusación del presente caso se alega que el traje de vestir que obtendría el acusado sería de un valor de $37.50, cantidad total pagada al final de las 15 semanas a razón de $2.50 semanales y que si resultare agraciado el socio en un sorteo no tendría que continuar pagando, pudiendo retirarse en cualquier momento con derecho a la devolución de las cantidades pagadas. Y estima la corte que en este plan no existe el elemento de pérdida esencial en el juego de lotería; y el mero hecho de que el traje que ha de corresponder a cada socio durante las 15 semanas se determine por la suerte a virtud de sorteos verificados semanalmente con tal fin, no convierte dicho plan en un juego de lotería dentro del art. 291 del Código Penal.

"SE DECLARA CON LUGAR la excepción perentoria a la acusación enmendada de no aducir hechos suficientes para imputar un delito público, y se ordena el archivo y sobreseimiento de dicha acusación sin costas."

Inmediatamente se dictó sentencia ordenando el archivo y sobreseimiento de la acusación, sin costas, y el fiscal del distrito interpuso contra ella el presente recurso de apelación.

Después de un estudio cuidadoso de la ley y de la jurisprudencia, encontramos que no puede llegarse a otra conclusión que no sea a la de la revocación de la sentencia recurrida.

La ley aplicable es el artículo 291 del Código Penal que dice:

"Se entiende por lotería, para los efectos de este Código, cualquier plan para la disposición o distribución de dinero o bienes por suerte, entre personas que hayan pagado o prometido pagar cualquier precio o compensación por correr la aventura de obtener dichos objetos o parte de ellos, o cualquiera acción o interés en los mismos, en virtud de algún acuerdo, inteligencia, o esperanza de que habrán de distribuirse por suerte, llámese lotería, rifa, empresa de regalos o por cualquier otro nombre."

No puede ser más amplia. Sus elementos principales son la suerte, la consideración y el premio, y ellos existen en el hecho que se imputa al acusado. Como sostiene el fiscal en su alegato, la suerte se manifiesta en este caso en los sorteos semanales que lleva a efecto el acusado; la consideración se evidencia por los $2.50 que los miembros del *club* pagan al acusado por optar a la adjudicación del traje sorteado semanalmente, y el premio es el traje que se sortea.

La circunstancia de que no haya pérdida para los miembros del *club* que no obtengan el traje sorteado, ya que al final de las quince semanas cada miembro recibirá un traje que aparentemente representa el valor de las cantidades págadas, no impide calificar el plan del acusado de lotería. Es una de tantas combinaciones que se han imaginado para eludir preceptos penales iguales o similares al nuestro vigentes en varios de los estados de la Unión.

Véase la siguiente jurisprudencia que tomamos del alegato del fiscal:

"Por abarcar los elementos esenciales de una lotería, dentro de la definición arriba expresada, se consideran como tales los llamados clubs en que los socios pagan cuotas periódicas y se hacen sorteos periódicos de determinado artículo o mercancía, aunque los socios desafortunados tengan derecho a recibir eventualmente el artículo, después de pagar una suma determinada, o retirarse y tomar mercancías a cambio de los plazos pagados, y aunque los socios victo-

riosos no sean determinados por sorteo, y sí por el vendedor.'' '38 C. J. 299, párrafo 22.

''Pueden hallarse varios casos de clubs de trajes formados por sastres para distribuir ropa por sorteo. El plan general que se sigue es muy similar en todos los casos, y se ha resuelto uniformemente que son loterías. En uno de estos clubs, por ejemplo, cada uno de los socios pagaba al sastre un dólar semanalmente, y participaba en los sorteos semanales durante treinta semanas, recibiendo un traje el socio a quien correspondiera determinado número, quien dejaba entonces de ser socio del club, y teniendo derecho a un traje de treinta dólares el último socio que pagara su cuota durante treinta semanas, independientemente del sorteo. La corte resolvió que el hecho de que un socio que no sea el agraciado en el sorteo de premios pueda, al continuar pagando un dólar por semana durante treinta semanas, recibir entonces un traje independientemente del sorteo, no impide que la transacción sea una lotería. Además, el hecho de que cada uno de los socios de tal club tenga derecho a recibir un traje cuyo valor sea igual a la cantidal de dinero pagada, en cualquier momento en que desee retirarse, no impide que el club deje de ser una lotería, sino que ello equivale únicamente a un incentivo adicional para prestarle ayuda al sistema de lotería, permaneciendo aún en la transacción el elemento vicioso.'' 17 R.C.L. 1226–1227, párrafo 13.

''El hecho de que no haya boletos en blanco y de que el poseedor de cualquier número o boleto obtenga algo de valor, no impide que la distribución de premios por sorteo sea una lotería. . . . .

''Nuestro estatuto no justifica que una corte decida que una cosa no es una lotería sencillamente porque no pueda haber pérdida, cuando pueden haber grandes ganancias contingentes; o porque carece de algunos de los elementos de una lotería según la definición particular de algún diccionario, cuando median todos los elementos y todas las tendencias perniciosas que el Estado trata de evitar.'' *Ballock* v. *State of Maryland*, 8 L.R.A. 671.

''Son loterías los clubs de trajes cuyos miembros pagan cuotas semanales y celebran sorteos de trajes semanalmente, recibiendo eventualmente un traje los socios desafortunados, después de pagar una suma estipulada, o pudiendo retirarse y tomar mercancías por las cuotas ya satisfechas.'' 25 Cyc 1639.

''El hecho de que un socio que no resulte agraciado en el sorteo de premios pueda, al continuar pagando un dólar por semana durante treinta semanas, percibir un traje independientemente del

sorteo, no impide que la transacción sea una lotería.'' *De Florin* vs. *State,* 121 Ga. 593, 49 S. E. 699.

''Se entiende que los estatutos abarcan todos aquellos métodos que participan de la naturaleza de loterías, en cualquier forma que se presenten, y las cortes no tolerarán que se haga uso de subterfugio alguno para continuar el mal. Se dijo que el hecho de que el socio tuviera opción de recibir mercancías por el valor de la cantidad que había satisfecho, sólo equivalía a un incentivo adicional para prestarle ayuda al sistema de lotería.'' *State* v. *Moren,* 48 Minn. 555, 51 N. W. 618.

La circunstancia de que el miembro del *club* pueda retirarse cuando le plazca devolviéndosele el dinero que haya pagado, tampoco varía la naturaleza del plan, que sigue siendo una lotería.

Así puede entenderse resuelto por la Corte Suprema de Minnesota en el citado caso de *State* v. *Moren, supra,* ya que devolverlo en metálico o en mercancía es más o menos igual. El lenguaje de la corte es como sigue:

''No se hizo la compra con el objeto de obtener en mercancías el equivalente del dinero pagado por el socio. El elemento vicioso permanece aún en la transacción. . . . La venta de un boleto daba al comprador la oportunidad de obtener algo cuyo valor era mayor que la cantidad por él pagada, y eso venía a ser un incentivo adicional para que se efectuara la compra.''

También son pertinentes las siguientes citas:

''El hecho de que cada socio tenga derecho a tomar en mercancías cualquier cantidad que haya pagado, en cualquier momento que desee retirarse del club, no impide que sea una lotería un club de trajes que es un medio según el cual un número de personas paga una cantidad semanal y se extrae todas las semanas un número cuyo poseedor tiene derecho a recibir un traje que vale mucho más que la suma pagada semanalmente, dejando entonces el socio agraciado de ser miembro del club.

*       *       *       *       *       *       *

''No puede negarse que el acusado trataba, y es de presumirse que así lo hizo, de aumentar su negocio por un medio o plan cuya característica, en lo que a obtener clientes se refería, era la oportunidad de obtener trajes por valor de $20 por una suma menor

de esa cantidad. Con tal plan se intentó apelar, y se apeló, a la propensión del hombre hacia el juego, y esto estaba comprendido dentro del mal que la legislación trataba de impedir, caía dentro de los términos del estatuto, y en nuestra opinión era una disposición de la propiedad por medio de lotería.'' *People* v. *McPhee.* 69 L.R.A. 505.

''Es culpable de hacer funcionar una lotería un sastre que organiza y dirige un club de trajes cuyos socios pagan el precio de un traje en plazos semanales, confeccionándose un traje semanalmente para el socio del club agraciado en el sorteo efectuado bajo la inspección de todos los socios, teniendo cada miembro derecho a tomar en mercancías la cantidad satisfecha, y pudiendo los miembros agraciados retirarse del club al recibir sus trajes.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

''De acuerdo con esta prueba estamos enteramente convencidos, y así lo resolvemos, de que ambos apelantes son culpables de hacer funcionar una lotería, dentro del propósito de la ley de este estado, y que claramente han violado tanto la letra como el espíritu de la ley prohibiendo loterías.'' *Grant* v. *State of Texas,* 54 Tex. Crim. Rep. 403, 112 S. W. 1069.

Los esfuerzos que hace en su alegato el ilustrado representante del acusado, no puede obscurecer los términos amplios y claros de la ley y la opinión de las cortes al interpretar esa ley en repetidos casos y bajo la influencia de múltiples circunstancias.

No se trata de un delito creado por interpretación. Fué la legislatura la que actuó. El estatuto no deja lugar a dudas de ningún género.

Tampoco puede influir las leyes que rigieron y las costumbres que pudieran existir antiguamente en esta Isla. El Código Penal de 1902 es un cuerpo completo, que obedece a un plan uniforme, y dentro de él se encuentra el artículo 291 que dejamos transcrito.

La jurisprudencia de California no resuelve el caso concreto que está sometido a nuestra consideración. La misma corte sentenciadora que la aplicó, dice en su opinión: ''No hemos encontrado en la jurisprudencia de dicho estado ningún caso que tenga analogía al presente.''

Lo que indujo a error a la corte sentenciadora fué su idea de que como no existía en el plan del acusado el elemento de pérdida, tampoco existía el delito. Aparte de que es muy aventurado afirmar si existe o no en estos casos el elemento de pérdida, ya que debemos suponer que cuando un comerciante además de los trajes que vende por el llamado justo valor, sortea otro, es porque puede hacerlo no ya sin pérdida, sino con ganancia, es lo cierto que lo que se requiere es, como dijimos al principio, la existencia de estos tres elementos: suerte, consideración y premio, para que el delito exista.

Debe, en tal virtud, *revocarse la sentencia apelada y devolverse la causa a la Corte de Distrito de su origen* para ulteriores procedimientos no inconsistentes con esta opinión.

El Juez Asociado Señor Texidor no intervino.