## KRAUS v. CLEVELAND (City), et.

Common Pleas Court, Cuyahoga County.

No. 601104.   Decided October 14, 1950.

Myron D. Malitz, William J. Kraus, Cleveland, for plaintiff.
Lee C. Howley, Director of Law, Robert J. Selzer, Asst
Director of Law, Cleveland, for defendants.

### OPINION

By MERRICK, J.

This is a taxpayer's action for injunctive relief, complaining that the defendants are expending tax money in the administration and execution of Ordinance 1316-A-43 of the City of Cleveland, which became effective February 9, 1944. Plaintiff is a taxpayer of the city and brings the action as a class suit.  Defendants are the City of Cleveland, its Com-

missioner of Assessments and Licenses and its Treasurer. The individuals are sued in their official capacities. In this opinion the parties will be referred to as the plaintiff and the City.

The evidence conclusively shows that the City is expending tax money in the carrying forth of the letter and purposes of the ordinance. To comprehend the design of the ordinance it is unnecessary to go further than to examine the purpose clause which reads as follows:

"**Sec. 2925-12 GC.** License required. On and after sixty (60) days after this ordinance becomes effective it shall be unlawful for any person, firm or corporation, organization, society or association, or any officer, employe, agent, member or representative thereof, to establish, promote or conduct any game of chance as defined in §2925 GC unless licensed so to do as hereinafter provided."

**Sec. 2925-11 GC,** referred to above defines "game of chance" as any game, other than policy, constituting a lottery by any name, wherein money is wagered and further defines "charitable purpose." Another section of the ordinance provides that only games of chance for charitable purposes are to be licensed.

If the effect of this ordinance is to license an unlawful act, then plaintiff is entitled to the relief prayed for and should prevail in this action.

The ordinance clearly provides that no person may conduct the game of chance described without securing a license and provides a penalty for violation. It is admitted that under the licenses issued games called Bingo or Keno and Split Club are operated.

The undisputed testimony offered in the case describes as bingo or keno a game which is identically defined in Webster's International Dictionary as follows:

"Keno. A form of lotto used in gambling in which numbered balls are taken one by one from the spout of a receptacle called a keno goose and announced, the players covering these numbers on cards they have paid for. The winner is the one who first gets five numbers covered in the same horizontal row."

The undisputed testimony likewise describes split club as a lottery which is defined in Webster's supra as follows:

"Lottery. A scheme for the distribution of prizes by lot or chance; especially a scheme by which one or more prizes are distributed by chance among persons who have paid or promised a consideration for a chance to win them, usually as determined by the numbers on tickets as drawn from a lottery wheel."

The history of this ordinance shows that its enactment followed rather closely the effective date of §13064 GC, as amended, which provides as follows:

"Whoever, for his own profit, establishes, opens, sets on foot, carries on, permits, makes, or acts as backer or vendor for, or on account of lottery or scheme of chance by whatever name, style or title denominated, etc.,—shall be fined * * * and imprisoned * * *."

Counsel for the City argues that the purpose of the ordinance was to prevent racketeers from coming into the City of Cleveland and conducting bingo games without any inspection and control to determine whether or not the enterprise was conducted for a charitable purpose, and then further providing for some protection for the participants in the play of the game of chance. Regardless of the purpose, commendable or otherwise, if this ordinance sanctions and permits an act, otherwise unlawful, then it is illegal, and any further operation thereunder should be restrained.

Counsel likewise argues that the ordinance does not license any form of gambling but merely controls and supervises conduct of games which are legal, by virtue of §13064 GC.

**Article XV, Section 6, of the Ohio Constitution** reads as follows:

"Lotteries and the sale of lottery tickets for any purpose whatever shall be forever prohibited in this State."

It should be observed that this constitutional provision, while it prohibits lotteries and the sale of tickets, is not self-executing insofar as violation of such provision may be the subject of a criminal prosecution. It could not be self-executing in the absence of a provision for a penalty in the Constitution. It is left to the Legislature to impose a penalty or not as it sees fit. This axiom of law likewise applies to many forms of gambling long prohibited only by statute. It is obvious, therefore, that §13064 GC may be presumed to be in effect a partial execution of the constitutional ban on

lotteries. But does this mean that any other form of gambling by way of lottery is made legal because it is not specifically included in the prohibition contained in §13064 GC? Does this section of the Code, which punishes lotteries operated for personal profit, by inference or otherwise, authorize the operation of lotteries for charitable purposes?

Counsel for the City places great reliance on the case of **State v. Parker, 150 Oh St, 22, 37 O. O. 318,** as proving the theory that controlled Bingo, Keno, Lottery or Split Club is legal in Ohio if the profits go to a charitable purpose.

A close and careful reading of the Parker case per curiam opinion supra, does not support that argument. On pages 25 and 26 of the opinion is found the following language:

"The inhibition against lotteries and the sale of lottery tickets was made a part of the state constitution of 1851 and that same provision still remains in effect. Although the constitutional provision prohibits lotteries and the sale of tickets, it is not self-executing in that it prescribes no penalty for its violation.

"An examination of various statutory provisions on the subject discloses a general legislative policy to prohibit and declare void all gambling contracts of every description, but only certain of such transactions are made punishable by fine and imprisonment of those who engage therein. There are many and various inhibitory provisions in the state Constitution for the violations of which no penalties are prescribed; such inhibitory provisions may be implemented only by appropriate action by the General Assembly * * *.

"**Sec. 13064 GC,** is not in conflict but, **so far as it goes, is in** harmony with the provisions of the Constitution referred to. **It does not authorize or give validity to any gambling transaction** * * *." (Emphasis ours.)

It is apparent therefore that the Supreme Court in this opinion has merely said that §13064 GC makes certain lottery games a crime, but does not specifically abrogate the constitutional provision condemning lotteries.

The Constitution is the sovereign voice of the people and under our form of government the sovereign people have the inherent right to declare any act or acts unlawful. It would be a superrefinement of distinction to say that the sovereign people, as the principal in government, could not make an act as unlawful as their agents, the legislature. It attributes to an agency greater power than to the principal,—something that is incredible. Indeed the modern practice of the

people in the making of constitutions is to do much of their own legislating direct, rather than await the pleasure and discretion of the legislative body. While the constitutional provision in question may not be self-executing, it is executory to the extent that it denounces the act as unlawful. **Hoffrichter v. State, 102 Oh St, 65.** What the constitution grants no statute may take away. **State ex rel v. Brown, 105 Oh St, 479.**

The Ohio Constitution is primarily a limitation upon political power, and secondarily a delegation of political power. **In re Hawke, 107 Oh St, 341.** What is expressly delegated or granted in a Constitution cannot thereafter be expressly or impliedly denied or qualified by statute; neither may it be increased nor decreased by statute; if so, the statute becomes at once paramount to the Constitution. Were it otherwise, constitutional law could be, at the pleasure of the General Assembly, absolutely nullified by the enactment of any contrary conflicting or amendatory statute. **Wagner v. Armstrong, 93 Oh St, 443.**

It is not possible to anticipate the subjects of legislation that may appear in the progress of a state's development. Therefore constitutions do not legislate. They locate and limit the powers of government and define the modes of their exercise. The general and comprehensive terms employed by the people of Ohio in fixing this boundary to legislative power indicate a determination to be relieved of all the evils of local legislation upon general subjects and a firm reliance upon the vigilance and constancy of the courts in securing to them the protection for which they made ample provision in the organic law. The provisions of the constitution and enactments in conflict with them cannot stand together. That conservation is of the highest type which conserves the paramount law. **State ex rel v. Davis, 55 Oh St, 21.**

The essential difference between a constitution and a statute or ordinance is that a constitution usually states general principles, and establishes a foundation of the law and government, whereas a statute or ordinance must provide the details of the subject of which it treats. A constitution, unlike a law, is intended not merely to meet existing conditions, but to govern future contingencies. 6 Ruling Case Law, 16.

The Constitution must be interpreted and effect given it as the paramount law of the land, according to the spirit and intent of its framers, as indicated by its terms. A legislative enactment which violates the true intent and meaning of the instrument, although it may not be within the letter,

is as much within the purview and effect of a prohibition as if within the strict letter; and an act in evasion of the terms of the Constitution, as properly interpreted and understood, and frustrating its general and clearly expressed or necessarily implied purpose, is as clearly void as if in express terms forbidden. The fundamental law of the State is to be construed in no narrow and illiberal spirit. It is to be construed according to its intention, where that is clear; and that which clearly falls within the reason of a constitutional prohibition may be regarded as embodied within it. **8 O. Jur., 136.**

It is a well recognized rule of construction that such interpretation will be given to a provision of the Constitution as will promote the object of the people in adopting it. It is the duty of the Court, and its only proper purpose, in the construction of constitutional provisions, to ascertain and give effect to the intent of the people when they wrote them into their Constitution. **Hupp v. Hock-Hocking Oil and Gas Co., 88 Oh St, 61.** The rule of constitutional interpretation that, a purpose being clearly indicated, provisions should, so far as their terms will permit, be construed so as to further that purpose, will not justify a court in denying the plain meaning of an unambiguous provision because of the belief that its natural consequences should not have been intended. **State ex rel v. Lynch, 87 Oh St, 444.**

Although a constitutional provision is usually a declaration of principles of the fundamental law, many of its provisions being only commands to the legislature to enact laws to carry out the purposes of the framers of the constitution, or mere restrictions upon the power of the legislature to pass laws, yet it is entirely within the power of those who establish and adopt the Constitution to make any of its provisions self-executing. Obviously there is a distinction between constitutional provisions which are self-executing and those which are not. One of the recognized rules is that constitutional provisions are not self-executing, if they merely enact a line of policies or principles, without supplying the means by which such policies or principles are to be effectuated. Prohibitory provisions in a constitution are usually self-executing to the extent that anything done in violation of them is void. **8 O. Jur., 150.**

So we must come to the inevitable conclusion that the Constitution puts a specific ban on lotteries and the sale of lottery tickets in plain unambiguous terms and emphasizes the intent of the framers by the use of the language "shall be forever prohibited in this state:" Because the Legislature

seemingly attempted to ignore conduct of a lottery unless it was for the operator's own profit in the amendment to §13064 GC, no reasonable interpretation can be had, that such action by our law makers could make any other type of gambling operation legal and not in conflict with the Constitution. Perhaps some bright minds in the Legislature were hoping to attain this end, but in the opinion of this court the effort has failed. And, by the same application, if the council of the City of Cleveland reasoned that the Legislature had legalized any type of gambling or lottery by the passage of this statute, the law does not sustain such conclusion, and will not look with approval on any legislation designed to permit common gambling by the operation of a lottery by whatever name is appended by the operators. Likewise it is of no consequence at law whether the profits go to charity or into private pockets.

It might not be amiss to observe in passing that any continuous operation which gives a mite of a large money intake to charity is not being operated for charitable purposes. It is apparent to this court that none of the licensees set forth in the testimony are operating for anything but private gain under the guise of a minute fractional dole to some charity or patriotic endeavor. And in the face of the testimony that, in all probability, false reports are being made to the city, it is apparent that instead of controlling conduct of the operators to keep out the racketeers, the ordinance is breeding and protecting vultures who operate a nefarious swindle in the shadow of legal protection and beneath a cloak of sweet charity.

An ordinance which attempts to license gambling is void. **Kraus v. City of Cleveland, 135 Oh St, 43, 13 O. O. 323.** The ordinance under consideration does just that and is void and contrary to the Ohio Constitution and it cannot be said that it receives any legal authority or life by virtue of §13064 GC. This section is not in conflict, but, so far as it goes, is in harmony with the provisions of the Constitution referred to. It does not authorize or give validity to any gambling transaction. State v. Parker, supra.

Disregarding the action of the Legislature in amending §13064 GC, and the intent of the lawmakers in so doing, there is ample legislation on the statute books to prosecute operators of Bingo, or Split games. **Sec. 13065 GC** provides a penalty for being a common gambler. **Sec. 13066 GC** provides up to 90 days imprisonment for operating a Keno bank. The city government could invoke these laws to punish bingo and split club operators instead of licensing them. **Sec. 13067 GC**

provides a jail sentence up to six months for advertising a lottery or where it is to be held. These laws were not modified, repealed or rendered inoperative by the passage of §13064 GC and our courts have so held. **State v. Moose, 151 Oh St, 19, 38 O. O. 506; State v Simonian, 77 Oh Ap, 201, 32 O. O. 508; State v. Lloyd, 30 O. O. 441.**

It is the conclusion of this court that the City of Cleveland had no authority at law to enact the licensing of any type of gambling and that the same is contrary to the general laws and Constitution of the State of Ohio. The injunction will be allowed as prayed for and a decree may be drawn accordingly. Defendants may have their exceptions noted in the record and a judgment for costs will be entered, provisional that a modified cost entry may be put on later to encompass attorney fees and other lawful expenditures of the plaintiff.