**KRAUS, Plaintiff-Appellee, v. CLEVELAND (City), Defendants-Appellants.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22062. Decided December 18, 1950.

Myron D. Malitz, Shaker Heights, W. J. Kraus, Cleveland, for plaintiff-appellee.

Lee C. Howley, Director of Law, Robt. J. Selzer, Asst. Dir. of Law, Cleveland, for defendants-appellants.

OPINION

By SKEEL, PJ.:

This appeal comes to this court on questions of law and fact from a judgment for the plaintiff entered by the common pleas court of Cuyahoga County.

The plaintiff's amended petition alleges that he is a taxpayer of the City of Cleveland and brings this action on behalf of all taxpayers similarly situated and pursuant to §4314 GC and the applicable provisions of the Charter of the City of Cleveland, after the Law Director, upon due notice, refused in writing to bring such action.

The plaintiff alleges that the City Council, on or about the 9th day of February, 1944, passed an Ordinance known as No. 1316 A 43 which became Secs. 2925-11 to 22 of the Municipal Code of the City of Cleveland, commonly known as the "Bingo" Ordinance, the purpose of such Ordinance being to license the conduct of games of chance operated for charitable purposes.

The plaintiff further alleges that the Commissioner of Assessments and Licenses of the City, acting under the authority of the "Bingo" Ordinance has licensed about forty Bingo Parlors which are now operating within the City of Cleveland.

The petition then describes the game of "Bingo" or "Keno" and concludes with the allegations that such game, as authorized by the said Ordinance, consists solely of a price or consideration paid by a player for the privilege of the chance of winning a prize and that such game constitutes gambling through the operation of a lottery.

The petition further alleges that the Bingo parlors have an annual income in excess of $4,000,000.00 and that less than three percent of such amount is given for charitable purposes. That the licensing of Bingo games is contrary to the laws of the State and in violation of the Constitution of the State of Ohio and that the City is without legal authority to license and legalize gambling and lotteries. And further, that in so doing the Commissioner of Assessments and Licenses has been and is expending tax funds which have been approved and paid by the City Treasurer and unless enjoined such public expenditures will continue to be made in licensing and supervising Bingo Parlors.

The plaintiff then prays that the defendants be enjoined from issuing licenses and expending tax funds in carrying out the terms of said Bingo Ordinance and that the court declare said ordinance void and the licenses issued thereunder void and of no legal effect.

The defendants filed a joint answer by which they admit all of the allegations of the plaintiff's amended petition except those describing the game of Bingo and that such game constitutes a lottery, deny the number of licenses issued and the income received in operating such Bingo Parlors and that the ordinance or the licenses issued thereunder are void and of no effect or in violation of the Constitution of the State of Ohio.

The defendants then allege that the Bingo Ordinance was passed under the Home Rule provisions of the Constitution of Ohio and is simply a regulatory ordinance imposing necessary restrictions on those licensed to conduct Bingo games for charitable purposes and that said Ordinance is not in conflict with the laws or the Constitution of the State of Ohio.

The plaintiff's reply denies all the affirmative allegations of the defendants' answer.

The evidence, supplemented by the facts admitted by the pleadings, establishes that bingo is a lottery and that those who conduct such games are in fact conducting a lottery in that such licenses sell for a stipulated consideration the chance to win a prize. The evidence also shows that about forty Bingo Parlors have been licensed which licenses purport to authorize the holder to operate a scheme of chance and contain on the face thereof the charitable enterprise for whose benefit the games are to be played. The evidence of the Commissioner of Assessments and Licenses shows that in excess of $3,000,000.00 gross receipts were reported as taken in by the forty licenses during the year 1948, of which less than three percent was given to charitable beneficiaries.

There is just one question presented and that is whether or not the City of Cleveland has legal authority to license the conducting of a lottery where some part of the income is set aside for a charitable purpose.

The Constitution of Ohio provides:

"**Article 15, Section 6:** Lotteries and sale of Lottery tickets for any purpose whatever shall be forever prohibited in this State."

Prior to 1943 there was in force and effect §13064 GC which provided:

"Whoever establishes, opens, sets on foot, carries on, permits, makes or acts as a backer or vendor, for, or on account

of lottery or scheme of chance, by whatever style or title denominated, etc., * * * shall be fined not less than $50.00, nor more than $500.00 and imprisoned not less than 10 days nor more than 6 months."

In 1943 this section was amended to read as follows:

"Whoever, for his own profit, establishes, opens, sets on foot, carries on, permits, makes or acts as backer or vendor for, or on account of lottery or scheme of chance by whatever name, style or title denominated etc., * * * shall be fined not less than $50.00, nor more than $500.00, and imprisoned not less than 10 days, nor more than six months."

The pertinent sections of the "Bingo" ordinance provide:

"Sec. 2925-11, Definitions. 'Game of Chance' for the purposes of this ordinance shall mean any game, other than policy, constituting a lottery, by whatever name, style or title denoted, participated in by two or more players for any prize, gift or award of thing of value, where a charge is made, or other consideration paid by any player for the right to participate in such game and the dominating factor in determining the result of such game is chance, notwithstanding that such result may be dependent to some extent upon the judgment, intelligence or adroitness of the player.

" 'Charitable purpose' shall include any charitable, benevolent, philanthropic, religious or fraternal purpose."

Sec. 2925-12 provides that no one shall conduct such games of chance until license is granted as provided by the ordinance. Sec. 2925-13 in part provides that no license to conduct games of chance shall be issued except for charitable purposes. Sec. 2925-15 provides the manner and form in which the application for a license to conduct a game of chance shall be made and the information to be contained in such application.

"Sec. 2925-17, Issuance of License. After such hearing and upon receipt of the application from the director of public safety with recommendations endorsed thereon approving the same, and following public hearing before the commissioner of assessments and licenses if satisfied that the applicant is of good character, and that the premises and conditions under which the licensee is to operate meet with the sanitary, building and fire regulations, shall issue

a license, notwithstanding any other provisions of the municipal code to the contrary, specifically Secs. 2978 to 2985-5 inclusive, and as an exception thereto. Each license shall contain the name of the beneficiary for whom the game is to be conducted as stated in the application, the name of the person to whom issued, the date or dates upon which said game or games is or are to be conducted and the location where conducted, and the date of expiration. The license shall not be transferable and shall be limited to the location specified therein unless otherwise authorized in writing by the commissioner of assessments and licenses for good cause shown."

Sec. 2925-19 provides for the duties of the commissioner of assessments and licenses in supervising and enforcing the regulations for the conducting of a game of chance and the obligation of licensees to make reports which reports shall contain the gross income of the game, the amount charged against such income for expenses and the amount paid to the charitable beneficiary. The section also provides that games shall not be conducted except between the hours of 1:30 p. m. and 4:30 p. m. and between 7:00 p. m. and 12:00 p. m. midnight.

It is the contention of the defendants that Art. 15, Sec. 6 is not self-executing; that §13064 GC, provides a penalty where one "for his own profit" conducts a lottery; that since the statutes of Ohio do not prohibit or impose a penalty for one conducting a lottery other than for his own profit, the city is empowered to license and regulate lotteries conducted for charitable purposes.

It is contended that the decision of the Supreme Court in the case of State v. Parker, 150 Oh St 22, fully supports the defendants position that Art. 15, Sec. 6 of the Constitution of Ohio is not self-executing and can therefore, not effect the validity of the Bingo ordinance until legislation is enacted to prohibit and make punishable all lotteries or games of chance.

An examination of this case discloses that such is not the fact. The Parker case involved the sufficiency of the allegations of the indictment in an attempted prosecution of the defendant under §13064 GC, as amended September 21, 1943. The indictment failed to allege that the lotteries conducted by the defendant were conducted "for his own profit."

The court held:

"An examination of various statutory provisions on the subject discloses a general legislative policy to prohibit and

declare void all gambling contracts of every description, but only certain of such transactions are made punishable by fine and imprisonment of those who engage therein. There are many and various inhibitory provisions in the State Constitution for the violations of which no penalties are prescribed; such inhibitory provisions may be implemented only by appropriate action by the General Assembly.

It is well settled that before an act of the General Assembly, providing for the exercise of any plenary power, can be held to be unconstitutional the prohibition of such exercise must be found in express terms or be clearly inferable from the language of the Constitution. 8 O. Jur., page 251.

Sec. 13064 GC, is not in conflict but, so far as it goes, is in harmony with the provisions of the Constitution referred to. **It does not authorize or give validity to any gambling transaction.** It does impose a fine and imprisonment upon anyone who, in the capacity stated, engages in any of the transactions enumerated in that section "for his own profit." (Emphasis ours.)

This decision does not hold that **Art. 15, Sec. 6 of the Constitution** is not self-executing. In fact, from the full context of the opinion it clearly indicates that it is self-executing to the extent that it discloses the public policy of the State to be that "Lotteries or the sale of lottery tickets **for any purpose whatsoever** shall be forever prohibited in this State." And while there can be no criminal prosecution of one who violates the provisions of **Art. 15, Sec. 6,** supra, with respect to acts that do not come within the provisions of §13064 GC, until the legislature provides therefor, there being no common law crimes in Ohio, certainly by the same token the legislature of the state not the city council of a municipal corporation has the power to authorize, for any purpose, charitable or otherwise, the right to conduct a lottery or sell lottery tickets in direct conflict of such constitutional provision. Such an act or ordinance would be unconstitutional and void and of no legal effect.

The law is clearly set forth in Cooley on Constitutional Limitations 8th Ed. at page 170 where the author says:

"In determining when a constitutional provision is self-executing there is a distinction between a declarative limitation of legislative power on a given subject, within which legislation may or should be invited and a positive constitutional inhibition which no legislative act can relieve or modify. The former might require future legislation, the latter must

from its nature be self-executing, * * * and the mere fact that the legislature might supplement and add to or prescribe a penalty for the violation of a self-executing provision does not render such provision ineffective in the absence of such legislation."

And at page 166, note 2, it is said:

"Any constitutional provision is self-executing to this extent, that everything done in violation of it is void. A provision that 'the legislature shall have no power to authorize lotteries for any purpose and shall pass laws to prohibit the sale of lottery tickets in this state' was held to be of itself a prohibition of lotteries. Bass v. Nashville, Meigs 421; Yerger v. Rainer 4 Humph. 259."

See also: State ex rel Kellogg v. Kansas City Mercantile Assoc., 45 Kan. 351; 25 Pac. 984; 11 L. R. A. 439; People v. McPhee, 139 Mich. 687, 103 N. W. 174; 69 L. R. A. 505; Seattle v. Chin Let. 19 Wash. 135 (52 Pac. 324).

We conclude, therefore, that the plaintiff is entitled to the relief prayed for. A decree may be entered as in common pleas court. Exc. Order See Journal.

McNAMEE, J, HURD, J, concur.