**ZEPP, Plaintiff, v. COLUMBUS (City), Defendant.**

Common Pleas Court, Franklin County.

No. 182876. Decided December 20, 1951.

Thomas W. Applegate, Columbus, for plaintiff.
Richard W. Gordon, Columbus, for defendant.

### OPINION

By RANDALL, J.

Plaintiff alleges that she is the chairman of Guild 13 of Doctors' Hospital, an unincorporated association organized for the purpose of aiding and the raising of funds for the Doctors' Hospital, a non-profit institution which dis-

penses services to charity cases without charge and that she brings this action on her behalf and on behalf of the members of said association.

This case is before us on motions of the defendant for judgment in her favor on the pleadings upon the ground that the pleadings fails to show a cause of action for declaratory judgment or other equitable relief.

Defendant further moves that a restraining order heretofore allowed in this case be dissolved in the event the court sustains her motion for judgment on the pleadings.

The answer of the city of Columbus after admitting its corporate capacity, denies all other averments of the amended petition.

The motion for judgment on the pleadings is in the nature of a demurrer. The only question presented by such motion is whether or not the facts alleged are sufficient to give the court jurisdiction to enter a declaratory judgment. There are several essentials to the jurisdiction of the court in a proceeding for declaratory judgment under our Uniform Declaratory Judgment Act.

First of all, it must appear that a justiciable controversy exists concerning the declaration in question. Secondly, the parties seeking such relief must plead facts to justify a declaration by the court as to the rights of the parties which would terminate the uncertainty and put an end to the controversy. Thirdly, the party seeking such relief must show that he has a legal interest in the controversy. If sufficient facts are alleged in the pleadings to show that the relief sought by the declaration is within the jurisdiction of the court, then the court in a proper case may declare the rights of the parties.

Sec. 12102-2 GC, provides as follows: "Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder."

Sec. 12102-6 GC provides as follows: "The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding."

The amended petition asks for a declaration as to whether or not a bingo game may be operated under §13064 GC. The only controversy alleged is that the plaintiff and the members

of her guild are threatened with arrest by the defendant if they operate a bingo game. There is no averment in the amended petition that the defendant has threatened the arrest of plaintiff or any member of her guild under the provisions of §13064 GC.

In order to have a justiciable question it must be shown that the plaintiff has a legal interest in the alleged controversy.

If in fact a bingo game is a lottery, it is prohibited as illegal by **Section 6 of Article XIV of the Ohio Constitution.** The statement of facts in the case of **State v. Parker, 150 Oh St 22, 37 O. O. 318,** shows that the alleged gambling scheme involved in that case was a keeno game which is practically the same as the game of bingo, and the game was at least impliedly held to be a lottery. In that case at page 25 of the opinion the court specifically held that §13064 GC did not authorize or give validity to any gambling transaction. We quote from the opinion: "Sec. 13064 GC, is not in conflict but so far as it goes, is in harmony with the provisions of the Constitution referred to. It does not authorize or give validity to any gambling transaction."

The only point decided in the Parker case, supra, was that the indictment which was brought under §13064 GC was insufficient because it did not set forth all the essential elements of the offense as required by the statute. The court held the statute to be constitutional as far as it went but no expression is to be found in the opinion in that case which would minimize to any extent the provision of **Section 6 of Article XIV of the Constitution** which provides that "lotteries and the sale of lottery tickets for any purpose whatever shall forever be prohibited in this state" nor is there any intimation in the per curiam opinion in said case that the inhibitions of this constitutional provision do not declare it to be the public policy of the state to forbid all lotteries. To be true the provision carries with it no penalty for disregarding the policy which it declares. However, in our opinion the prohibition is still effective to declare all lotteries, irrespective of whether carried on with a profit to the one who operates the same, to be illegal and against public policy. The expression of the court at page 25 of the opinion (page 319 Ohio Opinions) that the provision is not self-executing, refers only to the matter of absence of penalty for its violation and not to the public policy which it declares.

That conclusion was also reached by Judge Skeel in the case of **Kraus v. Cleveland, 46 O. O. 132, 58 Abs 360,** in affirming the decision of the Common Pleas Court of Cuyahoga

County in the case of **Kraus v. Cleveland, 42 O. O. 490, 58 Abs 353.**

We quote from the opinion of Judge Skeel on page 135: "This decision does not hold that **Article XIV, Section 6 of the Constitution** is not self-executing. In fact from the full context of the opinion it clearly indicates that it is self-executing to the extent that it discloses the public policy of the state to be that 'lotteries or the sale of lottery tickets for any purpose whatsoever shall be forever prohibited in this state.' And while there can be no criminal prosecution of one who violates the provisions of **Article XIV, Section 6,** supra, with respect to acts that do not come within the provisions of §13064 GC, until the legislature provides therefor, there being no common law crimes in Ohio, certainly by the same token the legislature of the state not the city council of a municipal corporation has the power to authorize, for any purpose, charitable or otherwise, the right to conduct a lottery or sell lottery tickets in direct conflict of such constitutional provision. Such an act or ordinance would be unconstitutional and void and of no legal effect."

The Court then quotes from Cooley on Constitutional Limitations, 8th ed. at p. 170 as follows:

"In determining when a constitutional provision is self-executing, there is a distinction between a declarative limitation or legislative power on a given subject, within which legislation may or should be invited and a positive constitutional inhibition which no legislative act can relieve or modify. The former might require further legislation, the latter must from its nature, be self-executing * * * and the mere fact that the legislature might supplement and add to or prescribe a penalty for the violation of a self-executing provision does not render such provision ineffective in the absence of such legislation."

At page 166, note 2 of the same authority, we find the following:

"Any constitutional provision is self-executing to this extent, that everything done in violation of it is void. A provision that the legislature shall have no power to authorize lotteries for any purpose and shall pass laws to prohibit the sale of lottery tickets in this state was held to be of itself a prohibition of lotteries. Bash v. Nashville, Meigs 421; Yorger v. Rainer, 4 Humph 259. See also State ex rel. Kellogg v. Kansas City Mercantile Assoc. 45 Kansas 351; People v. McPhee, 139 Mich. 687; Seattle v. Chin Let 19 Wash. 135."

We cite also the following statement from 11 Am. Jur. p. 695:

"Prohibitory provisions in a Constitution are usually self-executing to the extent that anything done in violation of them is void."

It is a general rule enforced in law courts, as well as in equity, that transactions which are illegal in the sense that they are malum in se, are against public policy and that the courts will leave persons who are parties to such transactions where they find them. How could there be a more sweeping or potent declaration than **Section 6 of Article XIV of the Constitution of Ohio** declaring the public policy with reference to lotteries? How can a court countenance or consider a declaration that lotteries are legal under the solemn mandate of the fundamental law of the state prohibiting them? To be effective must the legislature which is a mere creature of the Constitution, give sanction to the sovereign act of the people as expressed in the Constitution in order to render operation of lotteries illegal? In our opinion **Section 6, Article XIV** in and of itself is not only a mandate to the legislature, but a declaration of public policy.

In the case of **Kraus v. City of Cleveland, 42 O. O. 490, 58 Abs 353,** affirmed by the Court of Appeals in **46 O. O. 132, 58 Abs 360,** it was held that a bingo game was a lottery violative of the Ohio Constitution and that an ordinance attempting to license the game was void.

The Common Pleas Court of Stark County in the case of **Clayton Loder v. City of Canton, 65 Abs 517,** No. 92053, held that a bingo game was a lottery. The same conclusion was reached by the Common Pleas Court of Summit County in the case of Wishing Well Club, Inc. v. City of Akron, No. 18436.

**Section 6, Article XIV of the Ohio Constitution** is plain and unambiguous and must be construed by the plain and ordinary meaning of the terms employed without resort to extraneous aids which are proper in case of ambiguity.

Bouvier Law Dictionary gives the following definitions of the word lottery:

"A scheme for the distribution of prizes by chance."

"A scheme by which a result is reached by some action or means taken, in which result man's choice or will has no part and which human reason, foresight, sagacity or design cannot enable him to know or determine, until the same has been accomplished."

Certainly a bingo game falls within the scope of those definitions.

It would therefore appear that plaintiff has no legal interest in the alleged controversy and that consequently no justiciable question is presented.

In addition to the fact that no justiciable controversy is presented, in our opinion an interpretation of §13064 GC would

not put an end to the uncertainty or the controversy alleged in the petition. We believe it to be a logical conclusion that all lotteries are gambling or schemes of chance but all gambling is not necessarily a lottery. As we have pointed out, there are sections of the General Code and several ordinances under which prosecutions for the operation of bingo games might be brought.

We further call attention to the fact that the Supreme Court of Ohio has decided in the case of **State of Ohio v. Fremont Lodge, etc., 151 Oh St, 19, 38 O. O. 506,** that §13064 GC, is not in pari materia with §13067 GC.

In the case of Henry Gutches v. City of Columbus, No. 183059 of this court, another branch of this court sustained a demurrer. That case was of a similar nature to the one here under investigation. We quote from the opinion rendered on September 21, 1951, as follows:

"As pointed out by counsel for defendant, §13064 GC is not the only section of the General Code of Ohio which deals with gambling. Furthermore, as has been pointed out, there is also an ordinance of the City of Columbus which deals with the same subject. It therefore appears to the Court that to make a declaration in this case as to the correct interpretation of said §13064 GC 'would not terminate the uncertainty or controversy giving rise to the proceeding' if any.

"The plaintiff does not allege that he has been threatened with arrest by virtue of the provisions of §13064 GC. He alleges only that he has been threatened with arrest. It is obvious that this Court has no way of knowing under what section of the General Code it is contemplated, or whether he might be arrested and prosecuted under and by virtue of City Ordinance.

"In view of the fact that there are other statutes and ordinances dealing with the subject of gambling, it seems quite obvious that no useful purpose would be served and no uncertainty or controversy would be settled by making the declaration as to §13064 GC as prayed for by the plaintiff in his amended petition.

"Without discussing the other grounds of the dumerrer, it is the opinion of the Court that the demurrer should be and is sustained for the reasons above given."

We see no reason why prosecutions under other sections of the statute and certain ordinances of the city of Columbus, Ohio, might not be resorted to in the event the city of Columbus, sought to arrest plaintiff and members of her society as alleged in the petition. The mere fact that the legislature has not seen fit to provide a penalty for operation of lotteries

where operated not for profit, does not prevent the same legislature from enacting other sections of the Code, imposing penalties without this exception. Furthermore, pursuant to the constitutional provision, municipal ordinances may impose penalties where the legislature has not.

In addition to the foregoing, a more basic and fundamental consideration warrants the court in exercising its discretion to refuse to entertain this action. While such relief will not be denied in all cases where there is an adequate or coordinate remedy at law, the courts generally have avoided a declaratory judgment interpreting a criminal statute, where its constitutionality is not assailed and where there is no question of denial of due process of law or the taking of property without due process of law.

In the instant case there is no claim that §13064 GC is unconstitutional. Furthermore, no property rights of plaintiff are involved, since the carrying on of a lottery is against public policy and forbidden by Section 6 of Article XIV of the Ohio Constitution. Moreover, by way of defense to any arrest made, the plaintiff has adequate provision for due process of law. Any declaration made pursuant to an interpretation favorable to plaintiff's contention would call for injunctive relief to carry it into effect and the courts of this state, as well as in other jurisdictions, look with disfavor upon injunctive relief against criminal proceedings.

In the case of Mary Posani v. City of Columbus, No. 183,801, in this court, which is practically identical with the case at bar, another branch of this court recently refused to entertain jurisdiction of the case to issue a temporary restraining order prayed for by the plaintiff therein and made certain findings of law pertinent to this inquiry. We copy herewith the journal entry approved by the court in that case: "This day this cause came on to be heard on the motion of the plaintiff for a temporary restraining order restraining and enjoining the defendant, its officers, employees and agents, from in any manner molesting, disturbing, interfering or threatening to arrest plaintiff, her friends and associates in the conduct of an entertainment, enterprise known as "bingo," the entire profits of which entertainment are for charitable purposes only.

"Said motion was argued by counsel and submitted to the court.

"Upon consideration thereof the Court finds §13064 GC does not license, authorize or sanction the conducting of 'bingo' not for one's own profit; that if such statute would attempt to

authorize 'bingo' operations it would be clearly unconstitutional as violative of **Article XIV, Section 6 of the Constitution of Ohio;** that this Court of Equity should not assume jurisdiction to stay criminal proceedings or interfere with the execution of the criminal laws; that should plaintiff be arrested in accordance with the alleged threats of the defendant, any rights which she may have will be adequately protected by the criminal courts; and that, for these reasons the court finds that the motion is not well taken and should be overruled.

"It is therefore ordered and decreed that the said motion be and is hereby overruled.

"The plaintiff having paid the costs in this case and requested its dismissal, this cause is hereby dismissed without prejudice to a further action."

We also quote from **21 O. Jur. p. 1232,** as follows:

"Sec. 157—General Rules.—The general principle that a court of equity will not assume jurisdiction to stay criminal proceedings or interfere with the execution of the criminal laws has been applied in a number of decisions of the Ohio courts. Equity will not interfere with officers charged with the duty of enforcing penal statutes so long as they act reasonably and in good faith within the discretion conferred by their office. Neither will it interfere in criminal prosecutions, pending or contemplated, unless, with other necessary conditions, violations of property rights are clearly threatened. This elementary principle is founded upon the theory that there exists an adequate remedy at law. Where a court of law can do as full justice to the parties and to the matters in dispute as can be done in equity, a Court of Equity will not stay proceedings at law. Thus equity has frequently refused to enjoin enforcement of liquor laws and ordinances, or the search of premises for liquor. An injunction restraining the prosecution of proceedings brought before the mayor of a village against violation of the local option law in a neighboring city has been refused. Nor will an injunction issue to prevent officers from prosecuting one conducting a bakery in violation of statute, or to prevent the enforcement by criminal proceedings of a health ordinance compelling sanitary sewer connection of real property where the penalty does not involve the confiscation or destruction of the property, although an exception to the general rule is recognized where property rights are involved and irreparable injury is threatened by reason of a criminal prosecution.

"As a general proposition police officers will not be enjoined in the exercise of their proper duties, even though they perform them in an offensive and unlawful manner. Nor will a

court of equity interfere to prevent criminal proceedings merely because officials are insolvent, nor because the property in issue is of great value."

See also **21 O. Jur. p. 1235**, which reads as follows:

"Arrest.—The rule that equity will not interfere with the execution of criminal laws is applicable where it is sought to restrain police officers from making an arrest.

"The jurisdiction of equity cannot ordinarily be invoked for the purpose of enjoining a threatened arrest of one charged with the commission of a criminal offense. There is ordinarily in such case adequate remedy at law. The arrest of persons charged with the illegal sale of intoxicating liquor and the seizure of their property alleged to have been used in connection therewith are matters within the discretion of the officials who are charged with the duty of deciding whether or not there has been a violation of the law, and the judge of a court of equity will not substitute his judgment for that of such officials by issuing an injunction against such arrest or seizure. Yet an illegal interference with the enjoyment of property will be enjoined though as a consequence an officer may be restrained from making an arrest."

In the case of Chief of Police v. Cole, et al. (U. S. Circuit Court of Appeals, N. C.), 137 Fed. 2nd, 71, the court heard an appeal from a decision of the district court in which the chief of police of Elizabeth City, N. C., had been enjoined from arresting or interfering with plaintiffs who were Jehovah's Witnesses. The threatened arrest "was for violation of a city ordinance against distribution of booklets" etc. In the syllabus the court held as follows:

"Courts of equity do not ordinarily restrain criminal prosecutions."

"No person is immune from prosecution in good faith for his alleged criminal acts and imminence of prosecution though alleged to be in violation of constitutional guaranties is not a ground for equity relief, since lawfulness or constitutionality of a statute or ordinance on which the prosecution is based may be determined as readily in the criminal as in a suit for an injunction.

"A granting of a declaratory judgment is a matter resting in the sound discretion of the court.

"The discretion to grant a declaratory judgment ought not to be exercised where its only effect would be to decide matters which could better be decided in the criminal courts of the state in pending actions involving identical questions as to which a declaratory judgment is asked."

Apparently in that case criminal actions were pending at the time the declaratory judgment was asked for.

In the case of Butler v. Ellis (Chief of Police) 47 S. E. 2nd 861, an action was filed for declaratory judgment to determine the legality of the serving of intoxicating liquors to members of a private social club within its private quarters. The court held as follows:

"Declaratory action may not be used to determine whether a proposed plan of conducting a business amounts to a violation of criminal law in advance of undertaking such business, nor may such action be resorted to for determination of whether a plan or business already in existence violates a penal statute.

"Equity will take no part in administration of the criminal law and will neither aid criminal courts in the exercise of their jurisdiction nor will it restrain or obstruct them.

"Declaratory action would not lie upon petition of a bona fide member of a private club against chief of police to determine whether serving of intoxicating liquors to club membership only on private property was a violation of the penal statute."

In the case of Department of State et al. v. Kroger Grocery and Baking Company, an Indiana case, reported in 46 N. E. 2nd, 237, the court observed:

"The declaratory judgment act did not authorize action to determine whether sales in grocery stores of vitamin tablets constituted a violation of criminal statutes since no 'property rights' were involved and declaratory judgment would neither bar prosecution nor be available in prosecution as adjudication of facts."

For other cases involving many of the questions above discussed, see Wendle v. Board of Regents of the University of State of New York, et al., 82 N. Y. Supp. 2nd, 83; N. Y. Foreign Trade Zone Operators, Inc. v. State Liquor Authority, et al., 34 N. E. 2nd series, p. 316; International Mutoscope Reel Co., Inc., et al. v. Valentine, 286 N. Y. Supp. p. 806; Reed v. Littleton, 292 N. Y. Supp. p. 363; Witschner v. City of Atchison (Kansas Supreme Court) 117 Pac. 2nd, p. 570; State ex rel Egan v. Superior Court of Lake County, 6 N. E. 2nd, p. 945; Worden v. City of Louisville, 131 S. W. 2nd, 923.

In conclusion we find that the plaintiff has no legally protectible interest in the alleged controversy; that the allegations of the petition show no threat by defendant to arrest anyone for an alleged violation of §13064 GC, an interpretation of which is specifically sought in this action; that the request of plaintiff is for a declaration on a moot question; that there is no averment in the petition of the unconstitutionality of §13064 GC nor any averment as to unlawful threats

to interfere with any property rights or claims of the plaintiff; that a declaration by the court would not end the alleged controversy and that the nature of the case is such, because of these facts, that the court exercises its discretion to refuse to entertain the action.

The motion will be sustained, the cause dismissed and the temporary restraining order heretofore allowed will be dissolved and set aside.