BROWN, ATTORNEY GENERAL, *v.* MARINE CLUB, INC.,
IWO JIMA POST, ET AL.

(No. 950,438—Decided August 6, 1976.)

Court of Common Pleas of Cuyahoga County.

*Mr. William J. Brown,* attorney general, and *Mr. Lawrence D. Pratt,* for plaintiff.

*Mr. A. Richard Valore,* for defendant.

GEORGE J. McMONAGLE, J.   This is an action filed by the Attorney General of Ohio against the Marine Club, Inc., Iwo Jima Post, Patrick Pace and Charles Pace, as trustees, and unnamed agents, employees and officers of the foregoing defendants.

The plaintiff contends that he is the person charged by R. C. 109.23, as amended (the Ohio Charitable Trust Act), and by R. C. 1716.01 *et seq.* (the Ohio Charitable Solicita-

tions Act), and at common law, with the protection, supervision and enforcement of charitable trusts and charitable solicitations in Ohio; that the defendants in the operation of bingo games are subject to the provisions of said statutes and that they have failed to comply with the requirements thereon; that the defendants have and are operating bingo games for the purported purpose of benefiting a charitable cause or charitable organizations and are, therefore, subject to the requirements of R. C. 109.23 *et seq.* and R. C. 1716.01 *et seq.*; and that their failure to comply consisted of the failure to register as required by R. C. 109.26 and 109.31, and also to register as required by R. C. 1716.02, to file an annual surety bond as required by R. C. 1716.05, and to file annual reports as required by R. C. 1716.04.

Plaintiff further contends that by the receipt of monies for a charitable purpose or cause from the operation of said bingo games, that the individual defendants became, and are, trustees of a charitable trust and have failed to apply a reasonable amount of the funds so solicited to charitable causes or purposes and have, thereby, breached statutory and fiduciary duties. The prayer of the complaint reads as follows:

"WHEREFORE, plaintiff Attorney General William J. Brown prays that this court:

"1. Grant and decree judgment for the plaintiff on each of the five counts contained herein.

"2. Pursuant to counts I, II, III and IV, order that defendants register and file annual financial reports with the Attorney General as required for each and all years in which defendants have managed, conducted, operated or controlled bingo games and/or other similar games of chance for a charitable cause or purpose.

"3. Pursuant to counts I through V, temporarily restrain, preliminarily and permanently enjoin defendants from managing, conducting, operating or controlling any bingo games on behalf of purported charitable purpose(s) or organization(s) unless the defendants meet the following requirements:

"a) properly register and file financial reports as the Attorney General shall require pursuant to R. C. §109.23 *et seq.*, as amended, and R. C. §§1716.01 *et seq.*, including the filing of monthly financial reports detailing gross receipts, expenses, and allocations to charity;

"b) allocate and disburse a minimum of *one-third* (33 1/3%) of the gross receipts derived from the managing, conducting, operating or controlling of all *past* and *future bingo* games and/or schemes of chance to charitable purposes within a reasonable time.

"c) retain a certified or independent public accountant to maintain the financial records of said bingo games and/or schemes of chance to verify the accuracy of such records to the Attorney General.

"4. Issue pursuant to count V, preliminary and permanent injunctions enjoining defendants from disbursing, disposing of, dissipating, concealing and encumbering, altering, or removing from Ohio, the bank accounts, monies, pledges, choses in action, or assets or property, real or personal, tangible or intangible, in any form or place acquired by defendants as a result of bingo games and/or games of chance described herein unless defendants transfer to a charitable cause or purpose or charitable organization such amount of monies as the court shall determine to be reasonable in relation to the amount of monies solicited in the bingo games and/or games of chance previously conducted by defendants.

"5. Pursuant to count V, order that the amount of money applied to charitable purposes is *per se* unreasonable.

"6. Pursuant to counts I through V, order defendants to make an accurate and verified accounting to this court for all funds, pledges, property, and other things of value received by defendants from the managing, conducting, operating or controlling of bingo games and/or games of chance.

"7. Order defendants to pay the costs of this action.

"8. Order such other and further relief as justice and equity may require in the premises."

Defendants filed a joint answer admitting their operation of bingo games, denying the authority of the Attorney General to bring the within action, and denying that they are subject to R. C. 109.23 *et seq.* and 1716.01 *et seq.*

The court finds that the Attorney General of Ohio does have both statutory and common law authority to bring the within action. Subsequent to the filing and trial of the within action, the legislature adopted Substitute Senate Bill No. 398 (R. C. 2915.01 *et seq.*), which is commonly referred to as the "Charitable Bingo Act." This Act authorizes the conduct of games of bingo for charitable purposes and contains specific regulations for the operation of bingo games. It also requires the procuring of licenses and the keeping of records. This Bill was enacted in accordance with provisions of Article XV, Section 6, of the Ohio Constitution, as amended. It was adopted April 26, 1976, and approved by the Governor, on May 26, 1976, and reads as follows:

"Lotteries, and the sale of lottery tickets, for any purpose whatever, shall forever be prohibited in this State, except that the General Assembly may authorize an agency of the state to conduct lotteries, to sell rights to participate therein, and to award prizes by chance to participants, provided the entire net proceeds of any such lottery are paid into the general revenue fund of the state and the General Assembly may authorize and regulate the operation of bingo to be conducted by charitable organizations for charitable purposes. (Amended, effective November 5, 1975; HJR No. 16.)"

The bingo operations of the defendants were conducted prior to the adoption of Substitute Senate Bill No. 398 and subsequent to the adoption of the Constitutional Amendment.

The court must now determine whether all or some of the issues herein have become moot by virtue of the enactment of the Bingo Act. The Act was to permit and regulate the operation of bingo games for charitable purposes only. It is the contention of the Attorney General that even though bingo games are now operated in compliance with the said Bingo Act, that those who operate such

games, together with their employees, are nevertheless subject to the provisions of R. C. 109.23 *et seq.* and R. C. 1716.-01 *et seq.* The Act includes the following:

R. C. 2915.01:

"As used in Sections 2915.01 to 2915.12 of the Revised Code:

"* * *

"(Q) 'Charitable bingo game' means any bingo game that is conducted by a charitable organization that has obtained a bingo license pursuant to Section 2915.08 of the Revised Code and the proceeds of which are used for a charitable purpose."

R. C. 2915.02:

"(A) No person shall:

"* * *

"(4) Engage in betting or in playing any scheme or game of chance, *except a charitable bingo game,* as a substantial source of income or livelihood." (Emphasis supplied.)

R. C. 2915.07:

"(A) No person, except a charitable organization that has obtained a bingo license pursuant to Section 2915.08 of the Revised Code, shall conduct or advertise a bingo game.

"(B) Whoever violates this section is guilty of conducting an illegal bingo game, a felony of the third degree."

R. C. 2915.08:

(Note: This section requires a charitable organization that desires to conduct bingo games to procure a license to do so from the Attorney General, and specifies what the application shall contain.)

R. C. 2915.09:

"* * *

"(B) A charitable organization that conducts a bingo game shall not:

"(1) Pay any compensation to a bingo game operator for operating a bingo game that is conducted by the charitable organization;

"(2) Pay consulting fees to any person for any services performed in relation to the bingo game;

"(3) Pay concession fees to any person who provides

refreshments to the participants in the bingo game."

R. C. 2915.10:

(NOTE: This section describes the records that must be maintained and includes the following:)

"(B) The Attorney General, or any local law enforcement agency, may investigate any charitable organization or any officer, agent, trustee, member, or employee of the organization, and may examine the accounts and records of the organization to determine if a violation of any provision of Sections 2915.07 to 2915.11 of the Revised Code has occurred.

"If any local law enforcement agency has reasonable grounds to believe that a charitable organization or an officer, agent, trustee, member, or employee of the organization has violated any provision of Sections 2915.07 to 2915.11 of the Revised Code, the local law enforcement agency may proceed by action in the proper court to enforce Sections 2915.07 to 2915.11 of the Revised Code, provided that the local law enforcement agency shall give written notice to the Attorney General when commencing an action as described in this division.

"(C) Whoever violates division (A) of this section is guilty of a misdemeanor of the first degree."

It is certain that the legislature, by its enactment of R. C. 2915.01 (the Charitable Bingo Act), intended to provide for the control of all activities in the conduct of bingo games and regulation of the operators thereof. It is, therefore, obvious that the relief requested by Paragraphs 2, 3c, 4 and 6 should not be granted since the relief requested therein is now substantially all controlled by R. C. 2915.01 *et seq.* The questions raised therein are now moot.

The court has thoroughly reviewed the provisions of the Charitable Bingo Act. Section 6, Article XV of the Ohio Constitution, practically from the inception of the state, read as follows:

"Lotteries, and the sale of lottery tickets, for any purpose whatever, shall forever be prohibited in this state."

It had constantly been held by the courts, by virtue of this provision of the Constitution, that neither the General

Assembly nor any municipal councils could legalize, either directly or indirectly, gambling. This was amended so as to permit the state of Ohio itself to conduct gambling, that is, by virtue of the State Lottery. The Constitution, and presently in effect, and which is hereinbefore quoted, legalizes the operation of bingo for charitable purposes. The court finds from a review of the said Charitable Bingo Act that it conforms to the provisions of the Constitution and that its provisions, in all respects, are constitutional.

"By reason of the provisions of Section 6, Artivle XV of the Ohio Constitution, the General Assembly is without power to legalize, either directly or indirectly * * * the sale of lottery tickets, for any purpose. *Columbus* v. *Barr* (1953), 160 Ohio St. 209. See *Kraus* v. *Cleveland* (1950), 58 Ohio Law Abs. 353, 94 N. E. 2d 814, appeal dismissed 155 Ohio St. 98.

We shall now consider the contention of the Attorney General that even though bingo activities are controlled by the said statute, that the bingo operations are nonetheless subject to R. C. 109.23, as amended, and R. C. 1716.01 *et seq.* These contentions are based upon the claim of the plaintiff that the proceeds of bingo games constitute a charitable trust, that is, a fiduciary relationship, with respect to property arising under the laws of this State.

R. C. 109.23:

"As used in Sections 109.23 to 109.33 of the Revised Code:

"(A) *'Charitable* trust' means any fiduciary relationship with respect to property *arising under the law of this state or of another jurisdiction* as a result of a manifestation of intention to create it, and subjecting the person by whom the property is held to *fiduciary* duties to deal with the property *within this state* for any charitable, religious, or educational purpose." (Emphasis added.)

The court is satisfied, and so finds, that it is not the legislative intent that the proceeds of bingo games be considered as charitable trusts and subject to the provisions of R. C. 109.23 *et seq.* The bingo game activities are controlled and regulated by R. C. 2915.01 *et seq.* R. C. 1716.01

*et seq.,* called the Ohio Charitable Solicitations Act, was enacted to control or regulate the activities of a person denominated as a "professional fund raiser."

R. C. 1716.01:

"As used in Sections 1716.01 to 1716.07, inclusive, of the Revised Code:

"* * *

"(D) 'Professional fund raiser' means any person who, for compensation, plans, conducts, manages, or carries on any drive or campaign in this state for the purpose of soliciting contributions for or on behalf of any charitable organization, or who engages in the business of, or who holds himself out to persons in this state as independently engaged in the business of soliciting contributions for charitable purposes. *A bona fide officer or employee of a charitable organization shall not be deemed a professional fund raiser.*

"(E) 'Professional solicitor' means any person who is employed or retained for compensation by a professional fund raiser to solicit contributions for charitable purposes from persons in this state."   (Emphasis supplied.)

The Bingo Act requires that the games be conducted for charity, and bans the payment of compensation to any person except for security personnel.   The above emphasized portion of R. C. 1716.01(D) obviously exempts the officers and employees of a "charitable organization" as defined by R. C. 2915.01(H).   R. C. 2915.09(B) provides that a charitable organization that conducts a bingo game shall not pay any compensation to any operator or employee as defined in R. C. 2915.01(T), pay consulting fees to any person for any services performed in relation to the bingo game, or pay any compensation to any person providing refreshments.

The conducting of the bingo games in accordance with the statute requires the operations to be those for charity or charitable purposes.   The American Heritage Dictionary defines "charitable" as follows:

"1. Generous in giving money or other help to the needy.

"* * *

"3. Of, for, or concerned with charity."

The definition of "charity" includes the following:

"1. The provision of help or relief to the poor; alms giving.

"2. Something that is given to help the needy: alms.

"3. An institution, organization, or fund established to help the needy."

The Constitution was not amended, nor was Substitute Senate Bill 398 (R. C. 2915.01 *et seq.*) enacted, in order that some persons might establish a gambling business for private property, or even to provide employment. The Constitutional and legislative enactments are specifically for the purpose of assisting charitable organizations in providing funds for charitable purposes only. The legislative enactment specifies the means by which the Attorney General or any local law enforcement agency may require that the operation of bingo games and the utilization of the proceeds thereof be in accordance with the Constitution and the statutes. Under R. C. 2915.10, the Attorney General or any law enforcement agency may proceed by action in the proper court to enforce the statutes. A violation of the statutes constitutes a criminal offense. In addition, the Attorney General may be warranted in cancelling any license he had issued, or refusing to renew such a license, or bringing an action similar to the within action but based upon the statutes.

As part of the proceedings in the within action, the defendants have filed a detailed, itemized, accounting of the funds collected and distributed.

The amount expended for charitable purposes is approximately nine percent of the receipts. It is not to be considered that when only nine percent of the total proceeds of activities conducted solely for charity goes to a charity, the operator is in accordance with either the Constitution or the statutes.

The court does find that the amount of money applied by the defendants to charitable purposes is, per se, unreasonable.

The detailed accounting filed with the court indicates that, in 1975, the sum of $129,912.14 was expended for wages of persons engaged in the operation of these bingo games. The required withholding, social security, and state and city income tax deductions were made from the gross earnings of those so employed. This money was for earnings expended at a time when there was no restriction on the defendants with respect to the payment of employees for services. *Such payment may not be made in the future.*

R. C. 2915.01:

"* * *

"(T) 'Bingo game operator' means any person who is not a participant in the bingo game and who performs work or labor at the site of a bingo game including collecting money from participants, handing out bingo cards, or objects to cover spaces on the bingo cards, selecting from a receptacle the objects that contain the combination of letters and numbers that appear on the bingo cards, calling out the combinations of letters and numbers, and distributing prizes to the winner of the bingo game."

To require the defendants to retrieve and to pay to some charity, rather than to an employee, funds that have already been paid to the employee would be unrealistic, unreasonable, inequitable, and unwarranted by the facts or the law. It is the decision of the court that the plaintiff is not entitled to the relief requested in the latter respect, nor as otherwise prayed for by the plaintiff herein.

It is, therefore, the judgment of the court that the complaint of the plaintiff be dismissed at its costs.

*Complaint dismissed.*